```
115   391
a213s 302
```

## County Court of DeKalb County, et al., v. James B. Pogue, et al.

### Gen. No. 4,330.

1. COMMON-LAW WRIT OF CERTIORARI—*when, lies.* This writ lies to review the action of the County Court in calling an election to vote upon the proposition to remove the county seat, notwithstanding the statute declares the decision of the County Court with respect to such matter is final.

2. COMMON-LAW WRIT OF CERTIORARI—*when. lies.* Whenever there is no direct remedy provided for review, the writ of certiorari lies. even though some other remedy can be conceived as possible in the future.

3. PETITION FOR ELECTION—*right of signers of, to withdraw from.* Persons who have signed a petition asking that an election be called to vote upon the proposition to remove a county seat to another location, have the right to withdraw their names from such petition before the court has acted upon it.

Petition for writ of certiorari. Error to the Circuit Court of DeKalb County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the April term, 1904. Affirmed. Opinion filed August 24, 1904.

A. G. KENNEDY, County Attorney, and H. W. PRENTICE, for plaintiffs in error; L. C. WHITMAN and H. W. McEWEN, of counsel.

HOPKINS, DOLPH, PEFFERS & HOPKINS, for defendants in error; H. A. JONES and D. J. CARNES, of counsel.

MR. JUSTICE DIBELL delivered the opinion of the court.

James B. Pogue and eight others, citizens and legal voters of DeKalb county, filed a petition in the Circuit Court of that county for a common-law writ of certiorari to require

the County Court of that county to send up its record relating to the calling of an election at which should be submitted to the qualified electors of said county the question of removing the county seat of said county from the city of Sycamore to the city of DeKalb, it being alleged with due fullness and particularity of averment of facts that the County Court was without jurisdiction to make the order for said election, and that its proceedings in that behalf were illegal and void. Upon a preliminary hearing the Circuit Court ordered the writ to issue, and it was served upon the clerk of the County Court and upon the county judge. The clerk of the County Court filed a return to the writ, setting out the record of the County Court upon the subject of calling said election. The cause was afterwards heard upon the return, and the proceedings and the order calling said election were quashed. This is a writ of error sued out by said County Court, and by the clerk of the County Court, and by three other citizens of said county, claiming to be interested, to review said judgment.

The first vital question is whether a common law writ of certiorari will lie to review the action of the County Court in calling an election to vote upon a proposition to remove a county seat. The proceeding in the County Court was under the act of March 15, 1872, entitled "An Act to provide for the removal of county seats." That act requires public notice to be given of an intention to circulate a petition praying for an election for the removal of a county seat, at least ten days before the petition is circulated; and provides that when such petition is signed by legal voters of said county, who are not residents of the city (or township, if the county seat is not in a city,) in which the county seat is located, equal to two-fifths of all the legal votes cast in said county at the last preceding presidential election, and is filed in the office of the clerk of the County Court not less than forty nor more than eighty days before the first day of the next September term of the County Court, such petition shall be deemed a proposal to remove the county seat. An affidavit by three legal voters of the county is

required to be filed showing whether the point to which it is proposed to remove the county seat is nearer to or further from the center of the county than the county seat, which affidavit may be traversed within ten days by the affidavit of three other legal voters of the county. Section 2 then provides: " If so traversed, the county court shall, at the next September term of said court, after hearing the evidence in the case, decide whether or not the point to which it is proposed to remove the county seat is nearer to or further from the center of said county than the county seat." The act authorizes any citizen and legal voter to contest the right of any person to sign such petition, whose name is subscribed thereto, and also to contest any signatures he believes fictitious, upon his filing a prescribed affidavit ten days before said September term of the County Court, with a list of the names he proposes to contest. The clerk is required to publish notice of the filing of the petition for an election for removal of the county seat, stating therein that on the first day of the September term the court will hear testimony for and against said petition, as to the names on said petition, etc. Section 6 then provides as follows: " It shall be the duty of said court, on the first day of and during the said September term, to hear all evidence for and against said petition or petitions, as to the list or lists of names, filed in said court under section 5 of this act, and to strike from such petition or petitions all such names proven by competent evidence to be fictitious, or the names of persons having no legal right to sign the same under this act; and in case there shall be but one petition and no contest as to the same, or if there shall be a contest as to the same, and said petition shall, after striking therefrom all fictitious and illegal names, still contain the number of names of legal voters required by the second section of this act, the court shall order said election, according to the prayer of said petition."

Provision is made for the course to be pursued if there should be two petitions praying for removal of the county

seat to different points. In case of a contest, it is made
the duty of the clerk of the County Court to issue sub-
pœnas for witnesses whenever requested by either side.
Section 7 is as follows: "All cases of contest arising upon
said petitions or affidavit shall have precedence over all
other cases at the September term of said court, and shall
be heard and determined at said term, and the decision of
the County Court shall be final. And in case of sickness
or other inability of said county judge to preside, or in
case of a vacancy in said office, then it shall be the duty of
the circuit judge of the circuit in which said county is lo-
cated, to attend, hear and determine said contest." Section
8 requires the court, when it orders a county seat election.
to appoint challengers for the county seat and for the town
to which it is proposed to remove it. The rest of the act
relates to conducting the election, canvassing the returns,
contesting the election in a court of equity, and the effect
of the vote—the number of votes required for a removal
depending upon whether the point proposed is nearer the
center of the county than the county seat, etc. An act
adopted the next year provided that the words "county
court" and "court" in the act above cited, except in sec-
tions 12 and 13 thereof, shall be taken to mean the County
Court for the transaction of probate and other judicial busi-
ness; and that the words "county court" in section 13 (re-
lating to canvassing the returns) shall be held to mean the
county court for the transaction of county business. The
foregoing statement sufficiently shows the duties to be per-
formed by the County Court in relation to a petition for
an election to vote upon the removal of a county seat.
Section 7 makes the decision of the County Court final, and
the statute nowhere else provides for an appeal from its
decision, or for any other method of reviewing it.

It was decided in People ex rel. v. Wilkinson, 13 Ill.
660, that the circuit courts are the highest courts of origi-
nal jurisdiction in this state, and answer to the court
of King's Bench in England, and possess the same common-
law power to issue writs of certiorari; and that the court

of King's Bench has always been in the practice of award-
ing the writ to inferior courts and special jurisdictions,
commanding them to send up their records for inspection,
whenever it is shown that they have exceeded their juris-
diction, and in cases where appeal or writ of error will not
lie. And so it was there held that circuit courts in this
state have power to award a common-law writ of certiorari
to all inferior tribunals and jurisdictions whenever it is
shown either that they have exceeded the limits of their
jurisdiction, or that they have proceeded illegally, and no
appeal is allowed, and no other mode of directly reviewing
their proceedings is provided. The same rule has been an-
nounced in similar language in many later cases, among
the more recent of which are Comrs. of Drainage Dist. v.
Griffin, 134 Ill. 330; Behrens v. Comrs. of Highways, 169
Ill. 558; White v. Wagar, 185 Ill. 195. In the case last
cited, Hyslop v. Finch, 99 Ill. 171, is quoted with approval
as follows: " There are two classes of cases in which, ac-
cording to the previous decisions of this court, a common-
law writ of certiorari will lie: first, whenever it is shown
that the inferior court or jurisdiction has exceeded its juris-
diction; second, whenever it is shown that the inferior
court or jurisdiction has proceeded illegally, and no appeal
or writ of error will lie." It is argued no writ of certiorari
should be allowed under the County Seat Removal Act, be-
cause to award the writ would be to violate section 7 of
said act, which makes the decision of the County Court
final. We see no distinction in principle between a statute
which does not grant an appeal or a writ of error from an
inferior tribunal in some special proceeding therein, and a
statute which expressly declares the decision of such infe-
rior tribunal shall be final. For many years our Road and
Bridge Act has declared the decision of three supervisors
to lay out or vacate a road, or refusing to do so, on an ap-
peal to them from the decision of the highway commis-
sioners, shall be final. Nevertheless, our Supreme Court
has frequently reviewed the action of said three supervis-
ors by certiorari. In Comrs. of Highways v. Barnes, 195

Ill. 43, it seems to have been first suggested in argument that to award a certiorari in such a case would violate the provision of the statute that the order of the supervisors should be final. It was there held that certiorari would lie notwithstanding the enactment that the decision of the three supervisors should be final, and it was there further held that the attempted appeal did not confer jurisdiction upon the supervisors, and as they had no jurisdiction, their order was a nullity, and should be quashed. In their reply brief, plaintiffs in error take the position that the functions exercised by the County Court under the County Seat Removal Act are purely ministerial and not judicial or even *quasi*-judicial, and that, therefore, certiorari will not lie to review the exercise of those functions. This is supported by an extended argument and the citation of authorities. This position was not taken, nor were these authorities cited in the opening brief and argument by plaintiffs in error, and we are therefore deprived of such answer as defendants in error might have made in their brief and printed argument. The subject was mentioned by the attorney for plaintiffs in error in his oral argument. This position is inconsistent with that taken in plaintiffs in error's opening brief and argument, which was evidently based on the assumption that the proceeding before the County Court under this statute is judicial in its character. Thus, counsel said in that argument: "It is to be conclusively presumed it was the intention of the legislature that the hearing upon a question of this kind in the County Court should be conducted upon such lines that the court, while giving all parties a fair and impartial hearing at said term, upon all issues or questions which might properly be raised under the statute, should and must finally determine the case within the limits of said term." Again, they said that if defendants' position was maintained, "the door would be thrown open to such an interminable investigation that an attempt at a fair hearing upon the petition at the September term could, at best, be but a *judicial* farce." Again, they speak of "the *judicial* farce which would

County Court of DeKalb County v. Pogue.

necessarily result if withdrawals and re-petitions were to be allowed, and their attendant investigations were to be attempted by the court within the time limit imposed." We are of opinion counsel for plaintiffs in error took the correct view in their original brief and argument, that the proceeding before the County Court was in part, at least, judicial in its character. We think that is obvious from the provisions of the act we have above quoted and stated. Nor is there any force in the argument that in some other proceeding at some later date some other attack can perhaps be made upon illegal proceedings of a county court acting without jurisdiction under this statute. Wherever there is no direct remedy, certiorari will lie, even though some other remedy can be conceived as possible in the future. We are of opinion the court has power to award the writ, where, as here, it is alleged that the County Court proceeded under said County Seat Removal Act without jurisdiction and illegally in the respects detailed in the petition.

The County Court found that the total number of votes cast in said county at the last preceding presidential election was 8,169, and that two-fifths thereof was 3,268; and that the petition filed for an election to vote upon a removal contained 3,987 signatures. Certain names were contested and stricken therefrom, reducing its number to 3,910. The September term, 1903, of the County Court of DeKalb County began on September 7. The return made by the clerk of the County Court sets forth that " on the seventh day of September, A. D. 1903, at the hour of nine o'clock and thirty minutes A. M. and prior to the convening of the court on the said seventh day of September, A. D. 1903, there were delivered to the clerk of this court certain petitions for withdrawal in the above entitled cause, which said petitions for withdrawal are in the words and figures following." Said petitions for withdrawal and signatures thereto follow. We have not counted these signatures, for it is conceded in the brief and argument of plaintiffs in error that these petitions for withdrawal were signed by 1,252 persons, and that at least 1,224 of them were persons

who signed the original petition for an election to vote upon the question of removal. The order of the County Court recites that these petitions for withdrawal were presented to it on said seventh day of September, 1903, the first day of the September term, but after the original petitions had been presented, and after a motion by certain parties, part of the defendants in error here and another person, for a change of venue had been entered and denied, but before any other proceedings in the matter. Still other petitions for withdrawal were presented at a later day, and before the court made its final order, but it is not necessary that they be counted or considered. The court in its final order on September 11, 1903, denied leave to file said petitions for withdrawal, and ordered that the names of said parties asking to withdraw from the original petition be not stricken from the original petition, and that said original petition be not dismissed as to them; and in ascertaining the number of legal voters upon said original petition it counted said 1,224 names to make up the 3,910 signatures remaining on said original petition after rejecting certain names eliminated by the contest. If those 1,224 names had been permitted to be withdrawn as requested, that would have left but 2,686 names upon the petition, which would have been 582 less than the two-fifths of the voters at the last preceding presidential election, required by the act to authorize the calling of an election. If, therefore, those names should have been withdrawn or stricken from the petition, then there were not enough names lawfully upon the petition at the time the County Court made its final order to give it jurisdiction to order the election, and the court proceeded illegally and without jurisdiction, when it made the order for the election.

The second vital question therefore is whether persons who have signed a petition asking that an election be called upon a proposition to remove a county seat to another location, have a right to withdraw their names from the petition before the court has acted upon it. We regard

County Court of DeKalb County v. Pogue.

this question as settled for this state by Littell v. Board of
Supervisors, 198 Ill. 205. Plaintiffs in error point out cer-
tain differences between the facts of that case and the one
before us. There are differences. The cases are not iden-
tical. But those differences are not in relation to the prin-
ciples which were relied upon in the Littell case as the basis
for the decision. The principles there announced are gen-
eral, and are just as applicable to a petition for an election
to vote for the removal of a county seat as to any other
petition. It is there held as a general rule that a citizen
may withdraw his name from a petition voluntarily signed
by him after it has been presented to the body authorized
to act upon it, at any time before final action thereon by
such body, and if by such withdrawals the signatures left
upon the petition are insufficient in number to answer the
requirements of the statute under which the petition is
prosecuted, then the petition must fail for lack of a sufficient
number of signers remaining thereon. Signers may with-
draw at any time before final action, and if the withdrawals
reduce the petition so that it does not contain enough
signers to authorize the final action which the petition
seeks, then that final action cannot be taken. That the
Littell case is applicable here is further manifest by the fact
that the court there cites and relies upon LaLonde v. Board
of Supervisors, 80 Wis. 380, and State ex rel. v. County
Board, 88 Wis. 355, which are cases relating to the removal
of county seats. The position so taken by our Supreme
Court seems to be supported by the great weight of au-
thority. These authorities rest upon reasons which deserve
consideration. Signatures to such petitions are easily ob-
tained. Ordinary experience teaches that, in matters which
do not seem closely to touch themselves, many persons sign
petitions without sufficient consideration and inquiry, and
if the subject afterwards becomes a matter of public dis-
cussion so that their attention is carefully drawn to the
reasons for that for which they have petitioned, they often
then conclude they have been hasty in signing, or are in
error, or that they do not wish the petition granted. In
the case before us, the signatures were purely voluntary.

The signers received no consideration for joining in the petition. The petition contained no promise of any kind. The rule governing mutual subscriptions of money is not applicable. One signature was not a consideration for another signature. What good reason is there why one who has changed his mind since signing such a petition, and who concludes that either the public good or his own interest is not in harmony with the petition, may not recede from his signature before action taken thereon? The rule which permits a withdrawal at any time before final action upon the petition is much more likely to get at the real and mature judgment of the voters, and it is calculated to discourage a hasty presentation of a petition for signatures without a full disclosure of the real merits of the question. Circulators of the petition can usually avoid sufficient withdrawals to defeat the petition by taking care that the matter is fully understood by those to whom it is presented for signature. If they fail once, they can present another petition the next year. Plaintiffs in error have suggested many difficulties which might arise in the application of this rule. We think they are largely imaginary and not likely to occur. They are but arguments for a change in the law. The argument from inconvenience and from the supposed liability of this rule to abuse is sufficiently answered in the Littell case, *supra.* We are of opinion the County Court erred in refusing to receive the petitions for withdrawal; that those signatures should have been treated as stricken from the petition for an election; that their withdrawal left the County Court without jurisdiction to call the election; that its order here brought in review was therefore without jurisdiction and void; and that the Circuit Court for that reason properly quashed the proceedings.

Defendants in error have presented several other reasons why they claim the proceedings before the County Court were without jurisdiction, illegal and void, but as what we have already said disposes of the merits of the case, we deem it unnecessary to consider the other grounds also relied upon by defendants in error.

The judgment is affirmed.                    *Affirmed.*