## The People of the State of Illinois, Plaintiff in Error, v. John H. Peterson, Defendant in Error.

### Gen. No. 21,167.

1. INTOXICATING LIQUORS, § 19*—*when ordinances of village of Hyde Park in effect before annexation control issuance of dramshop license.* The ordinances of the village of Hyde Park relative to the licensing of dramshops which were in effect at the time the village was annexed to Chicago are still effective.

2. INTOXICATING LIQUORS, § 58*—*when renewal license for dramshop invalid where original license invalid.* Under ordinances which require that an application for a dramshop license shall be

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

signed by a majority of the property owners according to frontage on both sides of the street, and that where a license has been issued upon such an application, another application shall not be necessary for a renewal license unless objection is made in the manner provided by the ordinance, a renewal license issued on an original license which did not have the requisite number of consents to its application is invalid.

3.   INTOXICATING LIQUORS, § 38*—*when property owner signing application for issuance of dramshop license may revoke consent.* A property owner signing an application consenting to the issuance of a dramshop license may revoke his signature or consent at any time before the application has been acted upon finally by the proper tribunal.

4.   INTOXICATING LIQUORS, § 38*—*when revocation of signatures to application for original license invalidates renewal license.* On an information in the nature of quo warranto questioning the validity of a renewal dramshop license in the Hyde Park district of Chicago, it appeared that the ordinances of the village of Hyde Park, before its annexation to Chicago, required that the application should be signed by a majority of the property owners according to frontage and that the time for which it was granted should not extend beyond the municipal year in which it was granted, the latter provision being also contained in the Cities and Villages Act, art. V, par. 46 (J. & A. ¶ 1334); that the ordinances of the city of Chicago divide the saloon license year into two periods, from May to November and November to May, and provide that no license shall extend beyond the 30th day of April next following its issuance; that the application for the original license on which the renewal license was based was filed April 2nd for a period from May 1st, following, to November 1st; that a license for that period, dated May 1st, was delivered to him on April 14th, after all the investigations had been made and acts performed which the ordinances required; that on April 25th two of the signers of the application withdrew, leaving less than the required number, and notified the mayor and city collector on April 25th and 26th of their withdrawal. *Held,* that as a consequence of such withdrawal the original license was improperly issued and invalid and the renewal license was, therefore, invalid.

Error to the Superior Court of Cook county; the Hon. H. STERLING POMEROY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1914. Reversed. Opinion filed June 4, 1915.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

MACLAY HOYNE, for plaintiff in error; CHURCH & McMURDY, of counsel.

GEORGE F. BARRETT, for defendant in error.

MR. PRESIDING JUSTICE BARNES delivered the opinion of the court.

This was an information in the nature of a quo warranto tried before the court without a jury on an agreed state of facts and pleadings, which raised the question of the validity of a license for a dramshop in that part of Chicago that was formerly the village of Hyde Park.

The ordinances of that village, relating to the licensing of dramshops, have remained in force since its annexation to the city of Chicago. Under them an application for a license to keep a dramshop is required to be "signed by a majority of the property owners, according to frontage on both sides of the street in the block in which said dramshop is to be kept;" but a person making such application and receiving a license thereunder "shall not be required to present an application as above in order to obtain a renewal of the license," unless objection thereto is made as therein provided.

The license here attacked was for the period of November 1, 1913 to May 1, 1914, and was a renewal of a license issued May 1, 1913 for the period of May 1 to November 1, 1913, on an application signed as above provided; and it is conceded that if the original license was invalid, then the subsequent license, depending, as it did, on the validity of the original license, was also invalid. While the period for the exercise of the privileges under the license attacked has already expired, it is recognized that the proceeding still has vitality in that it involves the right to successive renewals of the license provided for as above stated.

Said ordinances provide that "the license shall state

the time *for which* it is granted, which shall not extend beyond the municipal year *in which* it shall be granted" and, unless sooner revoked, "shall expire with the end of the current fiscal year."

The ordinances of the city of Chicago provide:

"The saloon license year is hereby divided into two periods, from May 1 to November 1, and from November 1 to May 1. Licenses may issue for the full license year or for the unexpired portion thereof, or for any period of the unexpired portion thereof * * * provided that no license shall extend beyond the 30th day of April next following *its issuance.*"

Paragraph 46, article V of the Cities and Villages Act (J. & A. ¶ 1334), prohibits the extension of a license "beyond the municipal year *in which* it shall be granted."

The following facts calling for application of these various provisions were agreed upon: That Peterson filed his original application for a license April 2, 1913, for the period from May 1 to November 1, 1913; that a license for that period, dated May 1, 1913, was delivered to him April 14, 1913; that before it was delivered the official investigations were made and acts performed which the ordinances required; that the application was signed by the requisite number of property owners, but that two of them withdrew their signatures and consent on April 25th, notices of which were delivered to the mayor and the city collector, April 25th and 26th; and that the signature of each party was necessary to give the requisite frontage consent before a license could be legally issued.

The court found the issues for defendant.

The right to revoke one's signature or consent to an application or petition of such nature before it has been finally acted on by the proper tribunal to pass upon it is not questioned. The exercise of such right under the very ordinances under consideration was upheld in *Theurer v. People,* 211 Ill. 296. The subject and authorities relating to it were fully discussed in

that case and *Littell v. Board Sup'rs Vermilion Co.*, 198 Ill. 205. In each of the cases involving the question the withdrawal of signatures or consents requisite to confer jurisdiction on the tribunal required to determine the matter was deemed sufficient to deprive it of jurisdiction to issue the license or permit when such withdrawal was made before the petition had been finally acted on. And it unquestionably follows that where the jurisdictional facts exist at the time the tribunal finally acts upon the petition, a subsequent withdrawal of consent would not oust it of jurisdiction.

Whether the final act be the decision to issue the license, as defendant in error contends, or the issuance thereof, it will be conceded that all the jurisdictional facts necessary to authorize its issuance must exist when such action is taken, and that until then consents thereto are revocable. The pertinent question then is, was there jurisdiction to issue the license when it was delivered or when the revocations were made? That presents for inquiry whether the mayor had authority to issue the license before May 1st, when the period for which it was issued began.

The several provisions of the statute and ordinances above quoted contemplate, in our opinion, that a license shall not be issued until the period "in which" it is to be operative shall commence. The statute expressly provides that the license cannot extend beyond the municipal year *in which* it may be granted. In conformity therewith the Hyde Park Ordinance provides that the time *for which* it is granted shall not extend beyond the municipal year *in which* it shall be granted. The Chicago municipal year ends April 30th, and its ordinances provide that no license shall extend beyond the 30th day of April next following its *issuance*. From such provisions it is manifest that licenses for any portion of the calendar year after April 30th must be issued after that time. Obviously

it was for that reason that the license in question, be
ing for such a period, was dated May 1st. That was
the legal date of its issuance. It could not speak nor
confer any right before the date it purported to be
issued. Nor under the construction above given was
jurisdiction complete for the issuance of a license for
any part of the municipal year beginning May 1st,
until that year had begun. It follows, therefore, that
as final action on the application in question could not
have been legally taken until May 1st, the right of
revocation existed up to that time, and no vested right
in the license resulted from its delivery before it could
be legally issued. It did not purport on its face to
have legal existence or official sanction before May
1st, and any attempt at final action before that time
was unauthorized and ineffectual either to confer
rights upon the licensee or to defeat those belonging
to the signers of the application and the property
owners and householders they represented.

Against this conclusion we see little force to the ar-
gument of inconvenience. Whatever it might cause
should be subordinated to the rights of the public as
disclosed in the intent and purposes of the laws regu-
lating the sale of intoxicating liquors. This construc-
tion does not prevent consideration of an application
or taking the official steps preliminary to the issuance
of the license, but renders delivery of the license inef-
fectual for any purpose before it can lawfully issue.
Nor is one seeking the privilege a license confers,
which belongs to no one as a matter of right, in any
position to urge the inconvenience he may be sub-
jected to in acquiring such privilege or arranging
therefor.

Inasmuch, therefore, as no final action could have
been taken on such application before May 1st, when
the license was in fact dated, and as the revocations
of consent necessary to its issuance were made before

that date, the license was unauthorized and invalid. It follows that there was no right to the renewal thereof and that the license attacked is invalid for any purpose. The court's ruling to the contrary on the proposition of law submitted was error, and the judgment will, therefore, be reversed and a judgment of ouster entered in this court.

*Reversed.*