Doris Romine et al., Appellees, v. Luther J. Black et al., Appellees, Atwood Township High School District Number 154, Appellant.

Gen. No. 9,159.

Heard in this court at the October term, 1938. Opinion filed October 19, 1939. Rehearing denied February 23, 1940.

N. E. HUTSON, of Monticello, and CRAIG & CRAIG, of Mattoon, for appellant.

HARRY L. PATE, of Tuscola, and LEONARD, MEYER & FRANKLIN, of Champaign, for certain appellees; HARRY L. PATE and F. B. LEONARD, of counsel.

MR. JUSTICE HAYES delivered the opinion of the court.

This is a suit in equity brought by plaintiffs appellees, who will be hereinafter referred to as plaintiffs, against Atwood Township High School District Number 154, in the counties of Piatt, Douglas and Moultrie, defendant appellant, hereinafter referred to as defendant, the county superintendent of schools of Douglas, Moultrie and Piatt counties, and the members of the Board of Education of the Non-High School District of Douglas county, defendants appellees, for an injunction restraining the county superintendent of schools of Douglas county from filing in the office of the county clerk, a map showing the new and added boundaries of the Atwood Township High School District Number 154, pursuant to a petition filed with said county superintendent by voters residing in the territory of said Atwood High School District and also in the territory being a part of the Non-High School District of Douglas county, for the purpose of attaching said territory of said Non-High School District to the Atwood High School District, on the ground that the petition was insufficient to confer jurisdiction. The petition describes 18 sections of land in Douglas county which, up to this time, had been part of the Non-High School District of Douglas county, and requests that these particular sections be taken from the said Non-High School District and added to the Atwood High School District, and designates them as "territory number one." The complaint alleges that the plaintiffs are all legal voters, property owners and taxpayers in the territory described as "territory number one," and then sets out seven sections of land, being sections 1, 2, 11, 12, 23, 26, and 35, T. 16 R. 7, E. 3rd P. M. Douglas

county, Illinois, that lay on the east side and within "territory number one," which are adjacent to and west of the Tuscola High School District, and these above named seven sections are referred to as "territory number two." The Atwood Township High School District 154 is organized in all three of the counties of Piatt, Douglas and Moultrie, and a part of its territory lies west of said Non-High School "territory number one."

The complaint alleges that petition for the admission of "territory number one" to the Atwood High School was filed September 20, 1937, with the defendant Luther J. Black, county superintendent of schools of Douglas county. The complaint avers that said petition has not been acted upon by said county superintendent, by the filing of a map showing the new and added boundaries of "territory number one." Complaint also avers that the petition purports to be signed by 166 persons, claiming to be a majority of the legal voters residing in said "territory number one," and complaint further avers that in fact there are more than 322 legal voters in said territory; and denies that 166 signers constitute a majority; that since the filing of said petition and on the 7th day of October, 1937, prior to the filing of the complaint in this suit, there was filed written withdrawals of 10 of the 166 persons who signed said petition.

Defendants contest the legal right of the 10 persons who withdrew their names from said petition. This contention is the vital question in the case. The trial court held that they were entitled to withdraw their names. If the withdrawals are allowed to stand, it reduces the signers to 151.

Chapter 122, par. 104a, sec. 96a, Ill. Rev. Stat. 1937, [Jones Ill. Stats. Ann. 123.111(1)] requires the petition to be signed by a majority of the legal voters residing in the Non-High School territory. If there were 302 or more legal voters residing in the Non-High School territory, 151 names would not be a majority. It

is conceded by stipulation, and by concession of defendants, that there are 300 legal voters residing in the Non-High School territory shown to be annexed on September 20, 1937, when the petition was filed. In addition to this, there are 17 persons whom plaintiffs claim were legal voters and resided in the territory at the time in question, and which defendants denied. Out of these seventeen, the circuit court held that seven, namely, Lloyd Crimmel, Joseph Foster, Ina Garrett, Myrtle Gilreath, Lenore Lewis, Millard Lindsey and Vernon Mosley, were legal voters and resided within the territory in question, and that the other ten were not. The trial court finding was that there were 307 legal voters residing in the Non-High School territory at the time of the filing of the petition and that since the petition was only legally signed by 151 of the voters, it was not signed by a majority of the legal voters residing in the Non-High School territory.

Defendants contend that the trial court should have dismissed the suit for the reason that there was an adequate remedy at law by quo warranto so that a suit in equity for injunction was not proper. This raises the question of the proper construction of par. 104a, sec. 96a, ch. 122, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 123.111(1)] which statute says that when such petition is filed with the county superintendent "said territory shall be detached from said non-high school district and added to said community or township high school district." The statute then provides that it shall be the duty of the county superintendent, within 30 days after said petition is filed, to make and file with the county clerk of his county a map "showing the new and added boundaries of said community or township high school district as requested in said petition." Statute further provides that upon the filing of said map in the office of the county clerk "said territory so detached from said non-high school district shall cease to be a part thereof, but from thence said territory shall be a part and parcel of said com-

munity high school district or of such township high school district, as the case may be.''

Defendants contend that the filing of a petition, which is legal upon its face, with the county superintendent as prescribed by the statute, immediately causes the territory in the Non-High School District to be detached and become a part of the Community High School District without any further action on the part of the county superintendent, and that the direction in the statute to file the map with the county clerk is merely directory.

Quo warranto calls upon the defendant to show by what authority he or it is exercising powers or franchises. The defendant must be in the actual possession of an office or must be actually exercising a franchise or jurisdiction before quo warranto can be brought to test that right. To lay the foundation for granting the information in the nature of a quo warranto to test the right or title to an office, there must in all cases, have been an actual possession and user of the franchise. It is not sufficient, therefore, that the person against whom the jurisdiction is invoked should have merely claimed the right to take the official oath, but an absolute user must also be shown. High's Extraordinary Legal Remedies, section 627.

In the case of *Ziebell v. Village of Posen*, 257 Ill. App. 32, the court said,

''Under the circumstances shown by the record before us, is *quo warranto* the exclusive remedy, or may complainants properly seek relief in a court of equity? Under the law of 1872 it is provided that, where a majority of votes are cast for annexation, the board of trustees 'shall within ninety days thereof, by ordinance, annex such territory to such city, village or town, *upon filing* a copy of such ordinance with an accurate map of the territory annexed . . . in the office of the recorder of deeds.' This would indicate that the proceedings to annex are not completed until the ordinance and map are filed as required and that

this was a necessary step. If we view the proceedings under the 1872 statute, they were not completed when complainants' bill was filed and the temporary injunction issued.

"Quo warranto would not lie in the instant case because there had been no usurpation or assumption of franchise by the defendant."

In *People ex rel. Shanley v. O'Connor*, 239 Ill. 272, involving the validity of annexation proceedings, the court said,

"The sole purpose of the information is to require the defendant to show by what warrant he is holding or exercising the license, privilege or franchise in question." In the case at bar, the territory has not yet been annexed and the defendant has not yet assumed to exercise control over it when the bill was filed; consequently, it was not possible by quo warranto to inquire by what right the village exercised authority over the territory. Under such circumstances complainant properly sought the assistance of a court of equity.

Defendants cite the case of *Union School Dist. Directors v. New Union School Dist. Directors*, 135 Ill. 464, 474 in support of their contention that the filing of the petition for annexation with the county superintendent of schools was final in consummating separation of the territory in question from the Non-High School District and annexing it to the Atwood School District. In this case, it appears that the statute directed the filing of a map with the county clerk, but did not contain the language of the present statute. It appears from the opinion in that case that a mandamus suit had previously been brought and prosecuted to the Supreme Court and that proceeding had adjudicated the validity of the new district.

In the case of *School Directors Dist. No. 5 v. School Directors Dist. No. 10*, 73 Ill. 249 cited by the defendants, it appears there was no language in the section of the statute then under construction similar to the

present statute. There was no statement that from thence the territory stated became a part of the school district. It was merely a directory statement that after trustees of schools had organized a new common school district and made a record thereof, that they should then file a map.

This court passed on a similar statute to the present one in the case of *Potter v. Board of School Trustees*, 10 Ill. App. 343, 345 which after directing the filing of the map with the county clerk added this provision:

"Compliance with these requirements within the said period of ten days is hereby made essential to the validity of any alterations of district boundaries."

In construing this statute the court said,

"It is also urged by defendants in error that the provision requiring the filing of a map and list of the taxpayers resident in the newly arranged districts is not mandatory but directory merely, and two decisions of the Supreme Court are cited. These decisions were made under a statute wholly unlike the present one which expressly provides that 'compliance with these requirements within said period is hereby made essential to the validity of any alterations of district boundaries.' This language is mandatory and there is no room for construction."

A correct construction of the statute in question as to the time the actual separation of the territory from the Non-High School and the annexation to the Community High School is that which is clearly stated in the statute. That is when the county superintendent of schools shall file with the county clerk of his county a map showing the new and added boundaries of said Community High School as requested in said petition and from the filing of said map in the office of the county clerk of aforesaid, said territory so detached shall cease to be a part of the Non-High School District, but from thence said territory shall be a part and parcel of said Community High School District.

The language herein contained is clear, definite and mandatory, and to give a different construction and hold that the separation took place at the time of the filing of the petition with the county superinendent would nullify the words used by the general assembly and do violence to a clear, expressed legislative intent. Under this construction the Atwood Community High School did not acquire jurisdiction until the filing of the map, therefore, quo warranto would not be proper. Under the allegations set up in the complaint herein, the defendants were entitled to a hearing in the equity and for relief as prayed.

It appears from the record in this case that all the children attending high school in "territory number two" attended the Tuscola High School rather than the Atwood High School. This was when the parents and the children themselves had free choice between the two schools. If all the territory included in the petition is permitted to stand, these children will have to change from the Tuscola High School to the Atwood High School.

Ten of the original signers of the petition, after they had time to consider the question, withdrew their names. Defendants here contend these withdrawals were illegal after the petition was filed with the county superintendent of schools.

The case of *Littell v. Board of Supervisors,* 198 Ill. 205, which involved a petition of a board of supervisors to organize a new town under a statute made it the duty of said board to create a new town whenever not less than three-fourths of the voters residing in such territory shall petition for such new town. After signing the petition, 27 names were withdrawn from the petition and the county board refused to organize the township and the right of the withdrawal was upheld by the Supreme Court. The court said,

"Each petitioner acts on his individual responsibility and if he should change his mind on the question whether a new township would better serve the con-

venience of the inhabitants residing therein or if he should be induced to sign it under a misapprehension or through undue influence, he ought to have the right to correct his mistake if he does so before the rights of others have attached by the final action on the part of the board. . . . To absolutely prohibit a citizen from withdrawing his name from a petition voluntarily signed by him at any time after it has been presented to a body authorized to act upon it would be a harsh and unreasonable rule and also liable to work great hardship.''

In the case of the *County Court v. Pogue*, 115 Ill. App. 391, certiorari also brought to test the proceedings in the county court to remove a county seat. Prior to the hearing sufficient withdrawals were filed to reduce the requisite majority. This court said,

''The second vital question, therefore, is whether persons who have signed a petition asking that an election be called upon a proposition to remove a county seat to another location have a right to withdraw their names from the petition before the court has acted upon it. We regard this question as settled for this state by *Littell v. Board of Supervisors*, 198 Ill. 205. . . . The principles there announced are general, and are just as applicable to a petition for an election to vote for the removal of a county seat as to any other petition. It is there held as a general rule that a citizen may withdraw his name from a petition voluntarily signed by him after it has been presented to the body authorized to act upon it at any time before final action thereon by such body. . . . Signatures to such petitions are easily obtained. Ordinarily experience teaches that in matters which do not seem closely to touch themselves, many persons sign petitions without sufficient consideration and inquiry, and if the subject afterwards becomes a matter of public discussion so that their attention is carefully drawn to the reasons for that for which they have petitioned, they often

then conclude that they have been hasty in signing, or are in error, or that they do not wish the petition granted.''

We are of the opinion that the trial court properly gave effect to the 10 withdrawals.

The remaining question in the case is what constitutes a legal voter residing in the territory. In the case of *Board of Supervisors v. Davenport,* 40 Ill. 197, our Supreme Court said:

"The transient visit of a person for a time at a place does not make him a resident while there. Something more is necessary to entitle him to that character. There must be a settled, fixed abode, and intention to remain permanently, *at least for a time, for business or other purposes,* to constitute a residence, within the legal meaning of that term.''

In a recent case our Supreme Court held the same. See *Pope v. Board of Election Commissioners of East St. Louis,* 370 Ill. 196.

The trial court held that Millard Lindsey was a legal voter and resident of the territory in question. Evidence shows this young man was once married and lived in Tuscola then, but was divorced some two years ago, and since that time he has made his home with his mother and younger brother in district number two, living three miles northeast of Garrett. He has a room there in his mother's home where he keeps his own bed and personal belongings. He works part of the time at Mattoon, but is home most of the time each week. He votes in Garrett township and testified that he never voted elsewhere. The trial court was amply warranted in holding that this man was a legal voter and residing within the territory.

The trial court held that Ina Garrett was a legal voter and residing within the territory. The record showed that she had ben voting in the village of Garrett and voted there last in April, 1937, and had never voted anywhere else and that she had her household

furniture there and owned a one-seventh interest in real estate there; that she kept all her clothing there; that on the 20th of August, 1937, or about a month before the petition was signed in this case, she had gone to Indianapolis to visit her sister with the intention of returning to Garrett, and did return on the 19th of October. We believe the evidence amply warranted the trial court in holding this woman to be a legal voter and residing within the territory.

Joseph Foster was a retired farmer who, for 23 years, had lived on a farm in the Non-High School District in question; after his wife's death he had lived in a one-room house on this land with his own furniture and bedding. He had voted in Garrett township all his life; he had two sons, William and John Foster. On August 29, 1937, he left for a visit at the home of his son John in Tolono and said: "Leave my furniture alone, this is my home." He died on December 23, 1937, during the course of this visit to his son John. The evidence showed, conclusively, that he intended to return home in the spring and had not, in any way, changed his place of abode. The trial court properly held this man was not only a legal voter but he was a resident of the Non-High School District despite the fact that he was temporarily away from his home.

Now there are four other parties whom the trial court held were legal residents and it is needless for us to pass particularly on these, for the three herein taken up specifically make the total residents 303; there being 151 names on the petition which is less than the majority.

We concur in the construction put upon the statute by the trial judge, and hold that the judgment and decree of the circuit court was warranted by the record. And said judgment and decree of the circuit court of Douglas county is therefore affirmed.

*Decree affirmed.*