TONI M. KONALD et al., Plaintiffs-Appellees, v. BOARD OF EDUCATION OF COMMUNITY UNIT SCHOOL DISTRICT 220 et al., Defendants-Appellants.

Second District   No. 82—496

Opinion filed April 6, 1983.

Fay Hartog-Rapp and Everett E. Nicholas, Jr., both of Robbins, Schwartz, Nicholas, Lifton and Taylor, Ltd., of Chicago, for appellants.

Larry H. Allen, of Burfeind & Schlickman, Ltd., of Arlington Heights, for appellees.

JUSTICE UNVERZAGT delivered the opinion of the court:

The plaintiffs, Toni M. Konald *et al.*, brought a petition to detach certain territory from Community Unit School District No. 220 and annex that territory to Community Consolidated School District 15 and Township High School District 211, under article 7 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 7—01 *et seq.*). In concurrent decisions, the Regional Board of School Trustees of Lake County granted the petition and the Regional Board of School Trustees of Cook County denied the petition. Pursuant to the Administrative Review Act (Ill. Rev. Stat. 1981, ch. 110, par. 264 *et seq.*), recodified as article 3 of the Code of Civil Procedure (Ill. Rev. Stat. 1981, ch. 110, par. 3—101 *et seq.*), the plaintiffs brought an administrative review action in the circuit court of Lake County challenging the denial of their petition. The defendants were the three school districts involved and the regional boards. The circuit court reversed the decision of the Cook County board, and the defendant Board of Education of Community Unit School District No. 220 appealed that order.

The issues presented for review are (1) whether the withdrawal of signatures of certain petitioners prior to the decision of the Regional Board of School Trustees of Cook County was a proper basis for denying the petition, (2) whether the decision of the Regional Board of School Trustees of Cook County was against the manifest weight of

the evidence, and (3) whether petitions to detach territory under the School Code must comply with the Election Code provisions for circulation of petitions.

Section 7—2 of the School Code provides, *inter alia*, that to change the boundaries of existing school districts by detachment, a petition may be brought by two-thirds of the legal voters residing in any territory proposed to be detached. Here, there were 697 registered voters in the detachment area at the time the petition was filed, of which 534 initially signed the petition. This was a sufficient number under the statute, and the requisite number of names was on the petition at the time the Lake County regional board conducted the hearing on the petition and issued its decision in favor of detachment.

Section 7—2 of the School Code also provides that detachment be by "concurrent action" of (a) the county board of school trustees in which the county superintendent has supervision over the greatest portion of the detachment territory and (b) the county board of school trustees of the county in which the county superintendent of schools has supervision over the district to which the territory is proposed to be annexed. Section 7—6 of the School Code provides that the detachment territory hold a hearing on the petition and, after entering its final order, send a certified copy of the transcript of the hearing to any other regional board that must act. The other regional board must then "conduct a hearing as provided in this section on the transcript and either grant or deny the request in the petition." (Ill. Rev. Stat. 1979, ch. 122, par. 7—6.) The Cook County regional board had supervision over the district to which annexation was sought. In compliance with section 7—6, the Lake County board sent to the Cook County board the transcript of the hearing conducted on the detachment petition.

During the Cook County board's hearing on the matter, a document was submitted to the Cook County board signed by 78 of the original petitioners requesting withdrawal of their names from the petition to detach. This would have dropped the number of signatures on the petition to detach to less than two-thirds of the registered voters residing in the proposed detachment territory.

The order of the Cook County board denied the petition for detachment and annexation on two bases: (1) that the petition was insufficient at law in that 464 signatures were needed to validate the petition and that at the time of the hearing before the Cook County board there were only 437 valid signatures and (2) that the petition was not in the best interests of the schools and the educational welfare of the pupils would not be improved by the proposed boundary change. On

administrative review, the circuit court reversed the Cook County board's order, finding that the Cook County board acted contrary to law in accepting the evidence not determined by the Lake County board and that the Cook County board's order was contrary to the manifest weight of the evidence.

On appeal, the defendant argues that the withdrawal of signatures deprived the Cook County board of jurisdiction to hear the detachment petition and that jurisdiction is a matter that may be raised at any time prior to a final decision. The final decision, the defendant argues, does not occur until both boards have acted, in light of the requirement of concurrent action. The plaintiffs contend that the hearing by the Cook County board should have been limited strictly to the contents of the transcript and that the petition withdrawing the 78 names was additional evidence, which the Cook County board should have been precluded from considering.

Our supreme court first articulated the general rule for the withdrawal of signatures from a petition in *Littell v. Board of Supervisors* (1902), 198 Ill. 205. There, the issue was whether petitioners for the organization of a new township could, after the petition had been presented to the county board, withdraw their names so as to leave it with a statutorily insufficient number of names, thereby defeating the organization, and if so at what time they must request withdrawal. The request to withdraw the names was made after the county board posted notice of the hearing. Under the applicable statute, if the petition conformed to all its requirements the county board had no discretion and had to allow it. However, the board was required to give notice before it could take any final action, in order to allow interested parties to appear at the final hearing. The supreme court found that the act of signing such petitions "may be revoked at any time before the jurisdiction of the body authorized to act has been determined by it." (198 Ill. 205, 208.) In *Littell*, a determination of jurisdiction in effect was the final action of the board, since it had no discretion in deciding the matter. The court also stated:

> "If all the petitioners had sought to dismiss the petition at any time before *final action* by the county board it would scarcely be claimed that they would not have had the right to do so. Each petitioner acts on his individual responsibility, and if he should change his mind on the question whether a new township would better serve the convenience of the inhabitants residing therein, or if he should be induced to sign it under a misapprehension or through undue influence, he ought to have the right to correct his mistake, if he does so before the rights of

others have attached by the *final action* on the part of the board. \*\*\* To absolutely prohibit a citizen from withdrawing his name from a petition voluntarily signed by him, at any time after it has been presented to a body authorized to act upon it, would be a harsh and unreasonable rule and also liable to work a great hardship." (Emphasis added.) (198 Ill. 205, 210.)

The principles announced in *Littell* have been followed in numerous cases involving different statutory schemes for petitions. In *Theurer v. People ex rel. Deneen* (1904), 211 Ill. 296, the court was asked to decide whether a signature could be withdrawn from an application for a dramshop license after the application was filed and the mayor gave provisional consent to open the dramshop but before the license was issued. The court held that final action was not taken until the license was issued and cited *Littell* for the rule that a "petitioner [may] withdraw his name from a petition at any time prior to the time the tribunal created by law to pass upon and determine the proposition submitted by the petition has finally acted." 211 Ill. 296, 303.

The *Littell* rule was also applied to allow the withdrawal of signatures from the petition for the removal of a county seat, when the request to withdraw was made on the convening of the county court at the term at which the petition came up for hearing. (*Kinsloe v. Pogue* (1904), 213 Ill. 302, 305-06.) Where a petition for the organization of a drainage district was filed in court, followed by giving requisite notice and setting a hearing date, the court did not acquire general jurisdiction until it ascertained whether the petition was signed by the requisite number of property owners, and the withdrawal of names from the petition was permitted since the jurisdiction had not yet attached. (*Mack v. Polecat Drainage District* (1905), 216 Ill. 56, 60-61.) Similarly, even where a court must grant a petition to abolish a drainage district upon presentation of a petition signed by the required number of landowners, it is the order of court and not the presentation of the petition that abolishes the district, and names may be withdrawn after the petition is filed if done so before the order is entered. (*Boston v. Kickapoo Drainage District* (1910), 244 Ill. 577, 578-79.) In such a case, the board has a reasonable time to examine the petition, during which the right to withdraw is viable. *Sayers v. Drainage Commissioners* (1919), 214 Ill. App. 576, 580.

The request of certain petitioners to withdraw their names from a petition for the alteration of a public highway was too late when it was made after the commissioners of highways had passed upon the petition and an appeal was taken to the supervisors. (*Commissioners of Highways v. Bear* (1906), 224 Ill. 259, 261.) In that case, the com-

missioners' action was final for the purposes of jurisdiction, and the jurisdiction could not be destroyed during the appeal. Merely meeting, noting that a petition has been filed, setting a date for hearing, and ordering that notice be given is not such final action upon which a petition to vacate a highway thus deprives the subscribers of their right to withdraw from the petition. *Malcomson v. Strong* (1910), 245 Ill. 166, 168.

In *Commissioners of Sny Island Levee Drainage District v. Dewell* (1912), 256 Ill. 126, a sufficient application for a subdrainage district was presented to the commissioners, and after the commissioners passed upon the application and filed their report recommending the establishment of the subdistrict, certain landowners were properly permitted to withdraw their signatures, where the statute provided that the court upon hearing should pass upon the sufficiency of the application. The commissioners' report was considered preliminary to the hearing. The court expressed the following rationale for establishing the final action as the time the requisite number of signatures on a petition must be present:

> "[A] petitioner or applicant should not be permitted to speculate upon the action of the tribunal which he has assisted in putting in motion, by waiting until the tribunal has acted, and if its action is satisfactory to him to stand by its action, but if it is not satisfactory, to overturn its action by withdrawing his name from the petition or application which forms the basis of the action of the tribunal which has decided contrary to his expectations or wishes." 256 Ill. 126, 137.

In *Irmegar v. County of Tazewell* (1914), 264 Ill. 172, a written petition to contest a special election was filed in circuit court, and after the time for filing contests had elapsed several petitioners sought to withdraw their names from the petition. The court held that the attempted withdrawal was untimely. The court noted that in *Littell* and its progeny the petitions were in no sense pleadings in a judicial proceeding in court, nor did the dismissal of the petition operate to dispose finally of the questions involved, since a new petition could thereafter be filed for the same purpose. The court distinguished the *Littell* rule from the rule for judicial proceedings, where jurisdiction of a court over a cause depends on the state of facts at the time the action is brought, and after jurisdiction has once vested it cannot be divested by subsequent events. 264 Ill. 172, 176.

In *People v. Peterson* (1915), 192 Ill. App. 644, the appellate court in determining the validity of a license for a dramshop found that all the jurisdictional facts necessary to authorize the issuance of the li-

cense must exist when final action was taken and that until then consents to the license were revocable. An application with the required consent was filed, and following the necessary investigation, a postdated license was issued. After the license was issued, but before its effective date, certain property owners whose consent was required withdrew their consent. The court found the effective date of the license to be the legal date of the issuance, ruling that no final action could have taken place before then, and approved the withdrawal.

In *People ex rel. School Directors v. Oakwood* (1919), 290 Ill. 45, 48, concurrent action of multiple boards of trustees was required to create a new school district, petitioners properly withdrew their names before any action was taken, and the petitions were denied by the boards of trustees. The withdrawal could not be revoked to reinstate the names on an appeal of that decision to the county supervisor, whose only authority was to review the decision and not to entertain what would amount to an original petition.

The ability of petitioners to vacillate was addressed in *Crocher v. Abel* (1932), 348 Ill. 269, regarding a petition for annexing territory to a city. The court observed:

"[The *Littell*] rule is a necessary inference from the very nature of the right of petition and applies not merely to the petitions themselves but to withdrawals. Courts are not justified in placing any restriction upon the free action of the citizen not placed there by law and not required by good morals or propriety. We observe no reason why the signer of a petition who withdraws his signature may not change his mind a second time if he thinks he is better advised or informed about the subject. Up to the time of final action thereon he should have control of the matter as to whether or not his signature shall remain on the petition." 348 Ill. 269, 274.

In *Romine v. Black* (1939), 304 Ill. App. 1, the court affirmed that the principles of *Littell* have general application to various petitions. The court quoted from *County Court v. Pogue* (1904), 115 Ill. App. 391, 399:

" '*** Signatures to such petitions are easily obtained. Ordinarily experience teaches that in matters which do not seem closely to touch themselves, many persons sign petitions without sufficient consideration and inquiry, and if the subject afterwards becomes a matter of public discussion so that their attention is carefully drawn to the reasons for that for which they have petitioned, they often then conclude that they have been hasty in signing, or are in error, or that they do not wish the

petition granted.' " 304 Ill. App. 1, 10-11.

In *Bridgeport Township High School District No. 3—12 v. Shank* (1955), 7 Ill. App. 2d 183, 191-92, concerning petitions for detachment of territory from one school district and attachment to another, the only method of invoking the power of the county board of trustees to act was by filing a petition in conformity with the statute. Therefore, it was incumbent on the board to. determine first whether the petition met the prescribed conditions. Since names had been withdrawn from the petition, the commencement or continuation of the hearing should have abated.

Recently, in *Board of Education v. Regional Board of School Trustees* (1980), 82 Ill. App. 3d 1067, the court considered the rights of petitioners to withdraw from and reinstate names on a petition for detachment and annexation. The petition was filed September 7, 1977, with a sufficient number of signatures. Thereafter, certain names were withdrawn, and later some of the withdrawals were withdrawn. After that, in May 1978, the hearing officer heard evidence. When the trial court got the case, the legality of the petition was in question, and it was remanded to determine jurisdiction, with instructions that September 7, 1977 (the date the petition was filed), would be the date for determining the eligibility of the voters to sign and that any withdrawals, reinstatements, and additions would be counted if filed before June 1, 1978 (presumably the date of the decision, although this is not clear from the opinion). The appellate court approved of the trial court's time frame.

These cases evidence a strong reluctance to cut off the rights of petitioners to change their minds at any point before the acting tribunal has finally disposed of the matter and the petition in accordance with its proper powers. Even where that tribunal has no discretion to determine the merits of the proposal in the petition and is compelled to act on the petition provided the petition is legally sufficient, the filing of the petition is not the point at which its sufficiency is decided. Jurisdiction over the matter in the petition does not attach at all if names are withdrawn before the sufficiency of the petition is determined. Where the administrative tribunal does have the power to decide the merits, it may not proceed with the hearing unless initially the petition is legally sufficient, and even then it may not proceed to a final order unless the requisite number of names remains in effect. Final action has been construed liberally to·mean the time at which an order is legally effective and not simply the time at which a decision is reached. However, the rights of petitioners to add or withdraw their names do not continue during the time for appeal.

■ The interplay of final action and concurrent action has also been construed. It does not mean or imply joint action. Concurrent action is the independent action of each board, acting separately, each agreeing to the change and each having jurisdiction to act in the premises. (*Heppe v. Mooberry* (1932), 350 Ill. 641, 647; *People ex rel. Chamberlin v. Trustees of Schools* (1943), 319 Ill. App. 370, 378; *Harris v. Regional Board* (1980), 82 Ill. App. 3d 710, 712.) In *Heppe v. Mooberry*, the petitioners sought to change the boundaries of school districts. The applicable statute required the concurrent action of the boards of trustees in which the districts lay. The voters in the affected territory had to petition each board, and the respective petitions did not have to be signed by the same individual voters. Duplicate original petitions were filed with each board. The first board to rule on the petition granted it. Before its ruling, certain voters asked the second board to withdraw their names from its petition, but there was never a request to withdraw names from the petition filed with the first board. The court upheld the withdrawal, stating that "[i]f one of such boards has jurisdiction by reason of a sufficient petition and the other has not such jurisdiction by reason of not having a sufficient petition, then the action of both boards is nugatory and there can be no legal concurrent action." 350 Ill. 641, 647.

*Heppe* is distinguishable from the instant case in that it construed a different section of the School Code, each township had to be petitioned, and each held a separate hearing rather than using the same transcript, but the principles of equating final action to the action of the last board whose concurrent action is required are sound. The *Heppe* court cited *People ex rel. McNeal v. Dick* (1914), 263 Ill. 66, 68, for the following rule:

" 'The action of the trustees upon the petition must be concurrent. The action of each board is required. *Final action of the trustees means the finished action of all the boards required to act.* ' " (Emphasis added.) (350 Ill. 641, 648.)

In *People ex rel. McNeal v. Dick*, the issue before the court concerned the jurisdiction of the superintendent to hear an appeal when concurrent action of two school boards was required, the first board denied the petition for consolidation of two districts, and the second board granted it. The appeal was timely only as to the second order. The court noted that, even though the action of the first board made it certain that the prayer in the petition could not be granted, final action on the petition did not occur until the last board of trustees acted. Although this case involved jurisdiction for an administrative appeal, the rationale as to when final action occurred is equally appli-

cable for purposes of petitioners' rights to withdraw, as adopted by the court in *Heppe.*

In *Harris v. Regional Board* (1980), 82 Ill. App. 3d 710, the appellate court construed the same sections at issue in the case at bar, in determining when an administrative decision could be reviewed. The court stated:

> "Section 7—6 of the Code when considered in conjunction with section 7—2 indicates that a decision denying or granting the petition must be made by both the detaching and attaching school districts. A subsequent hearing by the attaching school district is imperative when the detaching district grants the petition for detachment." (82 Ill. App. 3d 710, 712.)

The court concluded that the decision of each county board was necessary to constitute an administrative decision subject to review. This case, like *People ex rel. McNeal v. Dick*, concerns the proper time for review, but again the reasoning is pertinent to when final action occurs for purposes of freezing the names on a petition.

■ There was no final action in the present case at the time the request to withdraw was made, since the Cook County board had not yet reached its decision. The plaintiffs' theory that the request to withdraw was new evidence and uncognizable on that basis is incorrect. The withdrawal issue was independent of the hearing on the merits and the presentation of evidence. It went rather to the very power of the Cook County board to conduct a hearing and reach a decision. The plaintiffs' complaint that they had no prior notice that the withdrawals would be presented is not buttressed by any showing of prejudice from the lack of notice and does not afford a basis for overturning the Cook County board's decision. The request to withdraw was properly submitted prior to the final decision. The plaintiffs do not suggest that the request itself was defective other than in its being presented after the Lake County board's decision. Since the withdrawal was timely, the petition before the Cook County board was legally insufficient, and the board had no authority to act further on the petition in that form. Therefore, the decision of the trial court in reversing the Cook County board was erroneous. We therefore do not reach the other issues presented.

The judgment of the circuit court of Lake County is reversed.

Judgment reversed.

LINDBERG and NASH, JJ., concur.