BOARD OF EDUCATION OF WAPELLA COMMUNITY UNIT SCHOOL DISTRICT No. 5, DE WITT COUNTY, *et al.*, Plaintiffs-Appellants, v. REGIONAL BOARD OF SCHOOL TRUSTEES OF McLEAN-DE WITT COUNTIES *et al.*, Defendants-Appellees.

Fourth District   No. 4—93—0163

Argued June 17, 1993.—Opinion filed June 24, 1993.—
Rehearing denied July 7, 1993.

Everett E. Nicholas, Jr., and Merry C. Rhoades (argued), both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Carbondale, for appellants.

Gregory C. Knapp (argued), of Saint & Ambrose, P.C., of Bloomington, for appellee Committee of Ten Petitioners.

Bruce Gammage, State's Attorney, of Clinton (Norbert J. Goetten, Robert J. Biderman, and David E. Mannchen (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for other appellees.

JUSTICE GREEN delivered the opinion of the court:

■ Section 7—2a(b) of the School Code (Code) provides that a "school district with a population of less than 5,000 residents *shall be dissolved* and its territory annexed as provided in Section 7—11 by the regional board of school trustees *upon the filing with* [that board] *of \*\*\* or a petition* signed by a majority of the registered voters of the district." (Emphasis added.) (105 ILCS 5/7—2a(b) (West 1992).) Section 7—11 of the Code provides for the regional board of school trustees to hold a hearing, upon notice, for determination of the district or districts to which the land of the "dissolved district" shall be attached. (105 ILCS 5/7—11 (West 1992).) Section 7—2a(b) of the Code also provides for dissolution upon the filing of a request for dissolution presented by the governing board of the school district to be dissolved.

On September 1, 1992, a group of petitioners filed a petition with the Regional Board of School Trustees of McLean-De Witt Counties (Regional Board) seeking dissolution of School District No. 5 of Wapella (Wapella). The petition requested that the territory be annexed "to one or more school districts to be determined by [the Regional Board]" and stated that the petitioners preferred that all such territory be annexed to Clinton Community Unit School District No. 15, De Witt, Macon, and Logan Counties (Clinton). The petition also set forth the names of 10 petitioners designated by the petitioners as a committee to act as attorney in fact for all of the petitioners as required by section 7—6(c) of the Code (105 ILCS 5/7—6(c) (West 1992)) when a petition of the nature here has more than 10 petitioners. The petition indicated that it was signed by 464 registered voters of Wapella, which constituted a majority of the voters residing in that district.

On September 9, 1992, various individuals filed an objection to the petition for dissolution challenging, in various ways, the validity of 109 signatures to the petition and other aspects of the petition. The objectors contended that enough signatures on the petition were invalidated as to leave fewer valid signatures than that which constituted a majority of the registered voters of the district. The objectors also maintained that the entire petition was invalid because of improper binding and numbering. On November 2, 1992,

51 people purporting to be signers of that petition filed a request with the Regional Board to withdraw their names from the petition for dissolution. On November 4, a motion to strike the request for withdrawal was filed.

The Regional Board held a hearing on November 5, 1992. The evidence at that hearing was entirely directed to the question of the district to which the Wapella territory should be annexed. The Regional Board did recite various steps which had been taken to check on the validity of the petition for dissolution and the signatures to that petition. However, the Regional Board denied a request of objectors to the petition to be heard on their objections. On November 13, 1992, the Regional Board entered an order finding the petition for dissolution was legally sufficient, and the academic interests of Wapella pupils would best be served by annexation to Clinton. Express ruling was not made as to the request to withdraw names nor as to the motion to strike that request.

Various objectors to the petition and those seeking to withdraw their names from the petition took administrative review of the November 13, 1992, order to the circuit court of De Witt County, which affirmed. On appeal to this court, contentions are made that (1) the request for withdrawal of signatures was timely and should have been allowed; and (2) the Regional Board should have allowed the objectors to the petition for dissolution to be heard at the November 5, 1992, hearing or at some other hearing. Those who took administrative review also maintain that the decision to annex the Wapella territory to Clinton was contrary to the manifest weight of the evidence.

We have heard this appeal on an expedited basis because of the need of the school districts involved and their personnel to make immediate plans. We ordered an accelerated briefing schedule and we now shape the procedural aspects of our decision with the need for a speedy resolution of this dispute in mind. We conclude that the request to withdraw signatures was ineffective and that the Regional Board's determination to have the entire territory of Wapella annexed to Clinton was not contrary to the manifest weight of the evidence. However, although section 7—2a(b) of the Code makes no express provision for a hearing upon objections to the petition, we hold that the Regional Board should have permitted the objectors to be heard. Accordingly, we will remand to the Regional Board to conduct such a hearing. Our ultimate decision will turn on that issue.

The question of the efficacy of the petition to withdraw signatures from the petition and the question of the procedure to determine the validity of the objections to the petition are closely related. We begin by discussing the timeliness of the request to withdraw signatures. The Code contains no express provision as to when such requests to withdraw signatures can be made. The theory that the request here was timely begins with the case of *Littell v. Board of Supervisors* (1902), 198 Ill. 205, 65 N.E. 78, which concerned the withdrawal of signatures from a petition presented to the governing board of a county seeking to create a new civil township. There, as here, a statute provided action which affected the existence of a governmental unit upon a petition signed by a certain percentage of the registered voters in the area involved.

In *Littell*, a statute required the county board to create a new township if three-fourths of the registered voters in a territory meeting certain requirements so petitioned. However, unlike here, before acting on the petition, the county board was required to give notice by posting and publication of a date upon which final action would be taken on the petition. Before that date, enough petitioners requested leave to withdraw that, if allowed, this would have negated the existence of a three-fourths majority. Upon the county board's refusal to create the township, proponents sought a writ of *mandamus*. The supreme court affirmed a dismissal of that request by the circuit court.

■■ The *Littell* court concluded that "the act of signing such petitions *is not an irrevocable act, and that it may be revoked at any time before the jurisdiction of the body authorized to act has been determined by it.*" (Emphasis added.) (*Littell*, 198 Ill. at 208, 65 N.E. at 79.) The *Littell* court noted with approval several out-of-State cases which held that petitioners had a right to withdraw their signatures from a petition up until the time final action is taken on the petition. In support of its decision that the county board was not subject to issuance of a writ of *mandamus* to create the township, the court stated:

> "If all the petitioners had sought to dismiss the petition at any time before final action by the county board it would scarcely be claimed that they would not have had the right to do so. Each petitioner acts on his individual responsibility, and if he should change his mind on the question whether a new township would better serve the convenience of the inhabitants residing therein, or if he should be induced to sign it under a misapprehension or through undue influence, he

ought to have the right to correct his mistake, if he does so before the rights of others have attached by the final action on the part of the board. It may be, as suggested by counsel for appellants, that vacillating or designing parties will abuse that privilege; but courts are powerless to prevent, in every case, such abuses. Suits may be, and doubtless sometimes are, brought with the deliberate purpose of dismissing them for some sinister purpose; but that fact cannot argue against the propriety of the general rule, which permits a plaintiff to dismiss his suit at any time before final judgment. To absolutely prohibit a citizen from withdrawing his name from a petition voluntarily signed by him, at any time after it has been presented to a body authorized to act upon it, would be a harsh and unreasonable rule and also liable to work great hardship. Generally, parties act from honest motives, and it is for the protection of the rights of such parties that laws are enacted and construed." *Littell*, 198 Ill. at 210, 65 N.E. at 80.

A large number of decisions have followed *Littell*. (*E.g., Crocher v. Abel* (1932), 348 Ill. 269, 180 N.E. 852; *Konald v. Board of Education of Community Unit School District 220* (1983), 114 Ill. App. 3d 512, 448 N.E.2d 555.) The enabling legislation in these cases calls for the creation of a governmental unit or a change in boundaries of such an entity upon a petition signed by a certain percentage of the registered voters involved. In each case the statute also provides for a hearing on the sufficiency of the petition before the change requested takes effect.

■ In cases of the nature here, when the statute sets forth a time for the board to which the petition is addressed to rule on the sufficiency of the petition, even though no objections to the petition are presented, a time frame to impose the *Littell* rule in regard to withdrawal of signatures is created. Section 7—2a(b) of the Code gives no such time frame. Giving literal interpretation to section 7—2a(b) of the Code, Wapella was dissolved before petitions to withdraw were filed here. Thus, the operation of section 7—2a(b) of the Code, in regard to withdrawal of signatures when viewed most favorable to those seeking to withdraw, is at least ambiguous. Accordingly, every word and phrase in section 7—2a(b) of the Code should be considered to have some meaning. *People v. Fabing* (1991), 143 Ill. 2d 48, 54, 570 N.E.2d 329, 332; *Kraft, Inc. v. Edgar* (1990), 138 Ill. 2d 178, 189, 561 N.E.2d 656, 661.

■ When we consider the difference in the framework of section 7—2a(b) of the Code and the enabling legislation in the *Littell* group of cases, we deem the intent of the legislature in providing that the dissolution will occur upon the filing of the petition was to create a presumption of validity which attaches immediately upon the filing of the petition without the further necessity of the Regional Board taking "final action," within the meaning of *Littell*, to determine the petition's validity. This presumption would be subject to a condition subsequent of filed and proved objections to the petition. However, the presumption of immediate validity of the petition, which does not arise from the legislation involved in the *Littell* line of cases, is sufficient to prevent requests to withdraw from the petition being filed after the petition for dissolution has been filed.

We note that section 7—2a(b) of the Code provides that when a regional board of school trustees is presented a dissolution petition by the board of the district, the regional board must not act on that petition if, within 45 days of the filing, a counterpetition is filed by a majority of the registered voters of the district in opposition to dissolution. We see nothing in this provision which is counter to our foregoing interpretation of the operation of section 7—2a(b) of the Code. Rather, the situation of the filing of the counterpetition by a majority of the registered voters would be another example of a condition subsequent which would negate the validity of the original petition.

We recognize the strong preference for allowing withdrawal of signatures by those petitioning a public body set forth in *Littell* and its progeny, but we consider that our interpretation of the legislation involved here is consistent with the ruling in *Beghr Willowbrook Venture v. Village of Willowbrook* (1991), 217 Ill. App. 3d 614, 576 N.E.2d 853. There, a statute permitted municipalities to create a special service area provided that the voters in the area could defeat that municipal action by the filing, within 60 days thereof, of a petition to do so signed. by 51% of the voters in the area involved (Ill. Rev. Stat. 1989, ch. 120, par. 1309). The appellate court held that once such a petition was timely filed, no signer was permitted to withdraw. The court pointed out that no statutory provision required a hearing after the filing of the petition. *Beghr Willowbrook Venture*, 217 Ill. App. 3d at 618, 576 N.E.2d at 856.

Each side maintains that an amendment to section 7—2a(b) of the Code, becoming effective after the order of the Regional Board on appeal, supports its position in regard to withdrawal of signa-

tures. As relevant here, that legislation provided that no petitions for dissolution shall be signed before would-be petitioners have "conducted a public informational meeting" after giving 10 days notice of the meeting by publication. (Pub. Act 87—1215, eff. November 23, 1992 (1992 Ill. Laws 3279, 3279) (amending 105 ILCS 5/7—2a(b) (West 1992)).) The advocates of withdrawal argue that this indicates a legislative intent that signers of a petition be protected from signing documents about which they are not well informed. However, if the amendment would be given any significance, it would seem to indicate a legislative recognition that the provision of section 7—2a(b) of the Code, which provides that the dissolution takes place upon filing of the petition, is strict, and those signing petitions should be well informed before they do so. In any event, we do not give significance to the amendment in interpreting section 7—2a(b) of the Code as it stood at times applicable.

As we have indicated, we hold that the Regional Board was required to permit the objectors to be heard on their objections. Statements in the record of the proceedings at the November 5, 1992, hearing indicate that the Regional Board had made an extensive investigation concerning the various objections to the petition and found them invalid. However, when the objectors requested to be heard and require the Regional Board to receive evidence, their request was refused. As has been stated, section 7—2a(b) of the Code makes no express reference to allowing objections to be heard. The section does say that a board "shall have no authority to deny dissolution requested *in a proper petition for dissolution* *** but shall exercise its discretion" on the issue of annexation. (Emphasis added.) 105 ILCS 5/7—2a(b) (West 1992).

Section 7—2a(b) of the Code does make clear that the Regional Board was not required to proceed on an invalid petition. We need not decide whether due process requires that persons in the position of objectors here had a right to be heard in order to conclude that the statute must be interpreted to so require. Any other interpretation would make no sense and would create further litigation by requiring objectors to go into the circuit court to obtain a ruling on a matter easily handled by the administrative body. We are not advised of any type of agency proceeding where parties with standing have no right to be heard upon a proper issue they have raised.

In determining to annex the territory of Wapella to Clinton, the Regional Board was acting pursuant to section 7—11 of the Code, which states:

"The regional board of school trustees shall give notice of a hearing, to be held not less than 50 days nor more than 70 days after a school district is dissolved under Section 5—32 or a petition is filed under subsection (b) of Section 7—2a, on the disposition of the territory of such school district by publishing a notice thereof at least once each week for 2 successive weeks in at least one newspaper having a general circulation within the area of the territory involved. *At such hearing, the regional board of school trustees shall hear evidence as to the school needs and conditions of the territory and of the area within and adjacent thereto, and shall take into consideration the educational welfare of the pupils of the territory and the normal high school attendance pattern of the children.*" (Emphasis added.) 105 ILCS 5/7—11 (West 1992).

In matters of annexation and attachment, the considerations to be given by a regional board of school trustees have been stated to be as follows:

"[C]onsider differences between school facilities and curricula, the distances from the petitioners' homes to the respective schools, the effect detachment would have on the ability of either district to meet State standards of recognition, and the impact of the proposed boundary change on the tax revenues of both districts." *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees* (1992), 146 Ill. 2d 347, 356, 586 N.E.2d 1273, 1277.

■ Evidence was presented that the tax rate for Wapella property owners would be less if annexed to Clinton, and a greater variety of courses were offered by that district. The evidence did not indicate any substantially greater traveling would be required by annexation to Clinton, and a study presented indicated that the annexation to Clinton would be most feasible. The Regional Board heard the witnesses and was entitled to give such weight to their testimony as it considered appropriate. The Regional Board did not breach its discretion, and its decision was not contrary to the manifest weight of the evidence.

■ One other matter requires brief discussion. As we have stated, an accelerated briefing schedule was imposed upon the parties. The Regional Board did not meet that schedule and filed its brief on June 9, 1993, which was after the appellants had filed their reply brief. The latter have moved to strike the Regional Board's brief, pointing out that they had no opportunity to respond to the

Regional Board's brief. Particularly in view of the need for a swift decision, and because of the basis for our decision, we conclude that the appropriate ruling is to deny the motion to strike that brief. The matters we determine to be controlling in this decision are already before us in the brief of the other appellees. For that reason we need not consider the additional issue that the Wapella Board of Education has no standing to appeal. The Regional Board is not prejudiced by the presence of that appellant as other appellants are before us on appeal to promote the same issues.

■ As we have indicated, we have elected to remand for a hearing on the objections. Before we do so, we deem it appropriate to give some guidelines as to the legal points most likely to arise at that hearing. Section 28—3 of the Election Code (10 ILCS 5/28—3 (West 1992)), which concerns petitions for the submission of public questions, is not applicable to the petition involved here as neither the Election Code nor the Code has so provided. Hence, neither the Election Code's provisions concerning addresses of petition signatories nor requirements for numbering and binding the petition forms are controlling. In this case, the most numerous objections to the petition concern the statement of the address of the signer. While the Election Code may give reasonable guidelines in this regard, the Board should consider the statements of address sufficient if the identity of the registered voter can readily be determined from the address provided notwithstanding technical noncompliance with the Election Code.

We remand the cause to the Regional Board with directions to hold a hearing upon the objections to the petition filed in this cause within 14 days from the issuance of this opinion. The Regional Board is directed to certify its ruling on those objections to this court together with a record of those proceedings within seven days following the hearing. Upon receipt of the foregoing, we will make a decision in this case consistent with this opinion but dependent upon the hearing on the objections and the ruling thereon. No further briefing or arguments will occur unless we so request.

Remanded with directions.

STEIGMANN, P.J., and McCULLOUGH, J., concur.