(Nos. 60999, 61081 cons.—

WALGREEN COMPANY *et al.*, Appellants, v. THE ILLINOIS LIQUOR CONTROL COMMISSION *et al.* (The Illinois Liquor Control Commission *et al.*, Appellants; Dennis E. Bober *et al.*, Appellees).—LEWIS H. WINDON *et al.*, Appellants, v. RUTH KURT *et al.* (Walter S. Kozubowski, City Clerk, *et al.*, Appellants; Ruth Kurt *et al.*, Appellees).

*Opinion filed January 23, 1986.*

James H. Schink and Marion B. Adler, of Kirkland & Ellis, of Chicago (Pasquale A. Zambreno, of Deerfield, of counsel), for appellant Walgreen Co.

Morton Siegel, Michael A. Moses, Richard G. Schoenstadt and James L. Webster, of Siegel, Denberg, Vanasco, Shukovsky, Moses & Schoenstadt, of Chicago, for appellants Lewis H. Windon *et al.*

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for appellant Illinois Liquor Control Commission.

E. Kenneth Wright, Jr., and Associates, of Chicago, for appellant National Certified, Inc.

Daniel P. Madden, of Chicago, for appellees Dennis E. Bober *et al.*

JUSTICE GOLDENHERSH delivered the opinion of the court:

This is a direct appeal from the order and judgment of the circuit court of Cook County. (94 Ill. 2d R. 302(a).) Plaintiffs, retail liquor licensees, filed separate actions to challenge the validity of petitions gathered to initiate local-option referenda pursuant to section 9—2 of the Li-

quor Control Act of 1934 (Ill. Rev. Stat. 1983, ch. 43, par. 167) on the question of whether the sale of alcoholic liquor should be banned in three precincts of the city of Chicago. Named as defendants were Walter S. Kozubowski, city clerk, and the board of election commissioners of the city of Chicago. The circuit court entered summary judgments in favor of plaintiffs. Intervening defendants, appellees here, filed a complaint in the District Court of the United States for the Northern District of Illinois for injunctive, declaratory and other relief seeking a declaration that section 9—2 of the Liquor Control Act was unconstitutional. Under the doctrine of abstention the district court declined to act and the cause was transferred to the circuit court. Although the record does not contain orders granting leave to intervene to all of the intervenors, the parties have not questioned the standing of any of the intervenors.

Section 9—2 in pertinent part provides:

> "When any legal voters of a precinct in any city, village or incorporated town of more than 200,000 inhabitants, as determined by the last preceding Federal census, desire to pass upon the question of whether the sale at retail of alcoholic liquor shall be prohibited in the precinct, they shall, at least 90 days before an election, file in the office of the clerk of such city, village or incorporated town, a petition directed to the clerk, containing the signatures of not less than 25% of the legal voters registered with the board of election commissioners or county clerk, as the case may be, from the precinct. ***"

On November 1, 1984, the circuit court entered an order in which it vacated the prior orders for summary judgment entered in favor of plaintiffs; declared the 25% requirement of section 9—2 unconstitutional; found that the 10% requirement contained in section 28—6 of the Election Code (Ill. Rev. Stat., 1984 Supp., ch. 46, par. 28—6) applied; and ordered the board of election com-

missioners if it determined, pursuant to section 28—6 of the Election Code, that the petitions were signed by 10% of the registered voters of the respective precincts, to certify for placement on the November 6, 1984, ballot the local-option questions.

On November 2, 1984, plaintiffs filed their notices of appeal to this court, an emergency petition to vacate and/or reverse the circuit court's order of November 1, 1984, and a motion to stay the force and effect of that order. We denied the motion for stay, the local-option question was placed on the ballots of the precincts, and the voters in each of the precincts voted to prohibit the retail sale of alcoholic liquor. Plaintiffs filed with this court their motion to stay the force and effect of the results of the November 6, 1984, election, and to permit them to remain in operation pending the final disposition of their appeal. We allowed that motion on December 5, 1984. By order of the circuit court several of the causes were consolidated for purposes of appeal, and this court on its own motion consolidated all of the causes.

Section 28—1 of the Election Code in pertinent part provides that questions of public policy which have legal effect shall be submitted to referendum only as authorized by the statute which so provides or by the Constitution. (Ill. Rev. Stat. 1983, ch. 46, par. 28—1.) It further provides that when a statute authorizes the initiation of a public question by a petition of electors the provisions of such statute shall govern with respect to the number of signatures required, the qualifications of persons entitled to sign the petition, the contents of the petition, the officer with whom the petition must be filed, and the form of the question to be submitted. If such statute does not specify any of the foregoing petition requirements, the corresponding petition requirements of section 28—6 shall govern such petition.

Because appellants are plaintiffs, defendants, and an

intervening defendant, and the intervening defendants are the appellees, further discussion of the issues will refer to appellants and appellees rather than plaintiffs and defendants.

Appellants contend first that the States, through the twenty-first amendment to the Constitution of the United States, "have a broad right to prohibit or regulate traffic in intoxicating liquor as a valid exercise of their police power." In the exercise of this power the States are vested with wide discretion "subject to minimal demands of the fourteenth amendment's due process and equal protection requirements." They argue that a litigant who challenges the constitutionality of a State's regulation of the liquor industry bears a heavy burden of persuasion and his objection cannot be sustained "unless the objectors demonstrate that the law in question is completely arbitrary and irrational." They assert that since the provisions of section 9—2 of the Liquor Control Act relate exclusively to the liquor industry, its validity must be determined under the foregoing rule.

Appellants contend that the circuit court erred in holding that the 25% signature requirement violated the equal protection clause of the fourteenth amendment to the United States Constitution. They argue that the validity of referenda procedures must be determined by the rational-basis test, which requires only that the classification bear a "rational relationship to a legitimate governmental interest, not whether it is overly broad." (*Kalodimos v. Village of Morton Grove* (1984), 103 Ill. 2d 483, 509.) Appellants argue that the 25% requirement does not improperly interfere with the voters' right to vote, or of any other rights guaranteed them by the first amendment to the United States Constitution. They contend further that the circuit court erred in holding the 10% signature provision of section 28—6 of the Election Code applicable for the reason that a referendum autho-

rized by section 9—2 of the Liquor Control Act is not within the scope of section 28—6.

Appellees contend that section 9—2 "unduly burdens access to the ballot in a referendum and must be examined with heightened scrutiny," rather than the minimum rationality test proposed by appellants. (*Williams v. Rhodes* (1968), 393 U.S. 23, 30-31, 21 L. Ed. 2d 24, 31, 89 S. Ct. 5, 10.) Citing *Anderson v. Celebrezze* (1983), 460 U.S. 780, 789, 75 L. Ed. 2d 547, 558, 103 S. Ct. 1564, 1570, appellees assert that a constitutional challenge to the validity of a State election statute requires that the court examine the character and magnitude of the injury resulting from the State action to the rights protected by the first and fourteenth amendments and the legitimacy and strength of the State's justifications for imposing the burden, and determine whether the State requires such a heavy burden to vindicate its interests. Appellees assert that the 25% petition requirement places too heavy a burden upon the voters, and violates the voters' first amendment rights because it prevents the voters from effectively associating with their fellow precinct residents.

We consider first whether the requirement of section 9—2 that the petitions be signed by 25% of the legal voters is violative of the equal protection clause of the fourteenth amendment or the first amendment to the United States Constitution.

We have examined the authorities cited by appellees and conclude that they are distinguishable from the situation here. Those cases involved access to the ballot by distinct political parties (*Anderson v. Celebrezze* (1983), 460 U.S. 780, 75 L. Ed. 2d 547, 103 S. Ct. 1564; *Illinois State Board of Elections v. Socialist Workers Party* (1979), 440 U.S. 173, 59 L. Ed. 2d 230, 99 S. Ct. 983); voters' first amendment rights to freedom of speech to advertise in support of or opposition to a referendum

(*First National Bank v. Bellotti* (1978), 435 U.S. 765, 55 L. Ed. 2d 707, 98 S. Ct. 1407); and voters' first amendment rights of association with a political party and political expression to contribute funds in support of or opposition to a referendum (*Citizens Against Rent Control v. City of Berkeley* (1981), 454 U.S. 290, 70 L. Ed. 2d 492, 102 S. Ct. 434; *Buckley v. Valeo* (1976), 424 U.S. 1, 46 L. Ed. 2d 659, 96 S. Ct. 612).

In *Town of Lockport v. Citizens for Community Action* (1977), 430 U.S. 259, 51 L. Ed. 2d 313, 97 S. Ct. 1047, the Supreme Court held valid a New York statute which provided that the effectuation of certain changes in county government required that in a referendum the proposed change be approved by both a majority of the voters in the cities in the county, considered as a unit, and a majority of the voters of the county outside the cities. The court said:

> "The equal protection principles applicable in gauging the fairness of an election involving the choice of legislative representatives are of limited relevance, however, in analyzing the propriety of recognizing distinctive voter interests in a 'single-shot' referendum. In a referendum, the expression of voter will is direct, and there is no need to assure that the voters' views will be adequately represented through their representatives in the legislature. The policy impact of a referendum is also different in kind from the impact of choosing representatives—instead of sending legislators off to the state capitol to vote on a multitude of issues, the referendum puts one discrete issue to the voters." (430 U.S. 264, 266, 51 L. Ed. 2d 313, 321, 97 S. Ct. 1047, 1052.)

See also *Howlette v. City of Richmond* (E.D. Va. 1978), 485 F. Supp. 17, 27, *aff'd per curiam* (4th Cir. 1978), 580 F.2d 704 (interpreting *Lockport* to hold that, because the right to obtain or vote in a referendum is not fundamental, a compelling-State-interest analysis may be inappropriate in analyzing equal protection challenges to ref-

erendum procedures).

In *Spaulding v. Illinois Community College Board* (1976), 64 Ill. 2d 449, this court held that there was no constitutional right to a referendum in connection with the formation of a new community college district although the relevant statute provided for a referendum when territory was being annexed to a district. The court said that the right to vote in a referendum was "purely a permissive one bestowed by the legislature." (64 Ill. 2d 449, 456.) We conclude that consistent with the foregoing authorities, since neither a fundamental right nor a suspect class was involved, the statute need only bear a rational relationship to the ends sought to be achieved by the State or to promote the interest the State has in this area. The State has a strong interest in maintaining the economic stability of a legally authorized industry and protecting the licensed purveyors of its products from irrational and capricious changes in the wet/dry status of their precincts every four years. There is no question that the General Assembly could have required that approval of local option prohibition of the retail sale of alcoholic liquors required a majority of 60% or more. (*Gordon v. Lance* (1971), 403 U.S. 1, 29 L. Ed. 2d 273, 91 S. Ct. 1889.) As this court observed in *Garcia v. Tully* (1978), 72 Ill. 2d 1, 10, "Whether the course chosen by the General Assembly to achieve a desired result is either wise or the best means available is not a proper subject of judicial inquiry."

We hold that the signature requirements of section 9—2 of the Liquor Control Act did not deprive voters of equal protection nor impinge upon their first amendment rights to contribute funds, advertise, or associate with other voters in support of a referendum.

In view of the conclusion reached, we do not consider the question whether the provisions of section 28—6 of the Election Code can apply to a referendum authorized

by section 9—2 of the Liquor Control Act.

For the reasons stated, the judgment of the circuit court is reversed and the cause is remanded to the circuit court with directions to enter judgment holding the petitions and referenda invalid.

*Reversed and remanded,*
*with directions.*