BEGHR WILLOWBROOK VENTURE *et al.*, Plaintiffs-Appellants, v. THE VILLAGE OF WILLOWBROOK, Defendant-Appellee.

Second District   No. 2—90—0358

Opinion filed February 6, 1991.—Rehearing denied March 13, 1991.

Nandia P. Black and Richard F. Ehreneich, both of Vedder, Price, Kaufman & Kammholz, of Chicago (Donald W. Jenkins, of counsel), for appellants.

Thomas W. Good, of Gorski & Good, of Wheaton (Gerald M. Gorski, of counsel), for appellee.

JUSTICE DUNN delivered the opinion of the court:

Plaintiffs, Beghr Willowbrook Venture *et al.*, appeal from the trial court's grant of a summary judgment motion in favor of the defendant, the Village of Willowbrook, on plaintiff's claim that defendant improperly found the petition filed by the plaintiffs insufficient under the Special Services Area Tax Act (Ill. Rev. Stat. 1989, ch. 120, par. 1309). At issue in this case is whether petitioners may withdraw their signatures from an owners' petition objecting to the creation of a special service area under the Special Services Area Tax Act after that petition has been filed in accordance with the Act. The trial court held petitioners could withdraw their names from the petition after it had been filed. We reverse.

The Special Services Area Tax Act (Act) (Ill. Rev. Stat. 1989, ch. 120, par. 1309) allows municipalities to create special service areas in order to provide residents and owners of property within that area with special services, meaning all forms of services pertaining to the government and affairs of the municipality or county. The Act permits the municipality to do so by levying special taxes on property located within the special service area.

Sections 3 through 8 of the Act set forth a comprehensive notice and hearing procedure to be followed by the municipality in creating such an area. Section 9 provides electors and owners in the area with a method of defeating the proposed special service area. The language of that section is as follows:

"If a petition signed by at least 51% of the electors residing within the special service area and by at least 51% of the owners of record of the land included within the boundaries of the special service area is filed with the municipal clerk or county clerk, as the case may be, within 60 days following the final adjournment of the public hearing objecting to the

creation of the special service district *** no such district may be created ***." Ill. Rev. Stat. 1989, ch. 120, par. 1309.

Plaintiffs are owners of property located within the special service area created by the defendant, the Village of Willowbrook (Village). The public hearing creating the special service area held pursuant to the Act was adjourned on November 21, 1988. On or before January 18, 1989, 58 days after final adjournment of the public hearing, the property owners within the area filed a petition in opposition pursuant to section 9 containing the signatures of more than 51% of the electors and owners within the special service area.

On or before January 20, 1989, 60 days after final adjournment of the hearing, 10 of the signatories to the owners' petition filed documents with the Village clerk declaring their intent to have their signatures withdrawn from the petition and requesting the clerk to do so. On February 6, 1989, the president and board of trustees of the Village held a specially called meeting and found the petition invalid based on the withdrawal of the 10 signatures.

Plaintiffs allege the Act does not contain any provision providing for the withdrawal of signatures after a petition, sufficient under section 9, objecting to the creation of the special service area has been filed. The plaintiffs contend the Village improperly undercounted the valid signatures appearing on the petitions of the owners of record filed on the 58th day after adjournment of the hearing and improperly found the petitions to be insufficient at law.

The Village argues that it properly found the owners' petition to be insufficient at law because, in the absence of a statutory limitation, a signatory may withdraw his signature from the petition at any time prior to the February 6, 1989, meeting which addressed the sufficiency of the petition. In granting summary judgment in favor of the defendant, the trial court held the statute must permit potential objectors the full 60 days to consider the issue and file the appropriate objection. We disagree.

The issue in this case is basically one of statutory interpretation. Unfortunately, the Act is silent concerning the withdrawal of signatures. Now we must decide what the legislature intended. In Illinois, a long line of cases exists, dating back to 1902, dealing with the withdrawal of signatures from petitions. (See *Irmegar v. County of Tazewell* (1914), 264 Ill. 172; *Commissioners of the Sny Island Levee Drainage District v. Dewell* (1912), 256 Ill. 126; *Boston v. Kickapoo Drainage District* (1910), 244 Ill. 577; *Commissioners of Highways v. Bear* (1906), 224 Ill. 259; *Mack v. Polecat*

*Drainage District* (1905), 216 Ill. 56; *Kinsloe v. Pogue* (1904), 213 Ill. 302; *Littell v. Board of Supervisors* (1902), 198 Ill. 205; *Konald v. Board of Education of Community Unit School District 220* (1983), 114 Ill. App. 3d 512.) While each case dealt with a different statute, a general rule developed over time.

That rule was articulated by this court in *Konald v. Board of Education of Community Unit School District 220* (1983), 114 Ill. App. 3d 512. The court stated:

> "These cases evidence a strong reluctance to cut off the rights of petitioners to change their minds at any point before the acting tribunal has finally disposed of the matter and the petition in accordance with its proper powers. *** Final action has been construed liberally to mean the time at which an order is legally effective ***." (114 Ill. App. 3d at 519.)

None of the cases cited above involve statutory requirements similar to those in section 9. Thus, to answer the question of whether petitioners are entitled to withdraw their signatures after the owners' petition has been filed, this court must determine when final action takes place under section 9. The Village argues the veto cannot become effective until the Village itself determines the petition has satisfied the requirements set forth in the Act. We disagree.

■ The question of when final action takes place is one of statutory interpretation. When construing a statute, the best indicator of legislative intent is the statutory language itself. When that language is clear and unambiguous, courts will not read into the statute exceptions, limitations and conditions. (*People v. Goins* (1988), 119 Ill. 2d 259, 265.) When interpreting statutory language, the language should be given its plain and ordinary meaning. *Hoffman v. Board of Fire & Police Commissioners* (1988), 175 Ill. App. 3d 219, 224-25.

■ The language of section 9 is clear. If a petition signed by 51% of the electors and owners within the special service area is filed within 60 days after adjournment, no such area may be created. Furthermore, the statute states the subject matter of the petition may not be proposed again relative to any signatories of the petition for two years. (Ill. Rev. Stat. 1989, ch. 120, par. 1309.) It is clear from the language of the statute the legislature intended an owners' petition satisfying the requirements set forth in section 9 to veto the creation of a special service area.

Accordingly, our supreme court has described section 9 as a "veto procedure." (*Coryn v. City of Moline* (1978), 71 Ill. 2d 194, 202.) In *Coryn,* the court held that the veto procedure provided by

section 9 of the Special Services Area Tax Act does not violate due process. (*Coryn*, 71 Ill. 2d at 202-03.) Similarly, section 9 was described as providing for the defeat of a special service project if its requirements are met. (*See Andrews v. County of Madison* (1977), 54 Ill. App. 3d 343, 354.) However, in the instant case, the trial court interpreted the language of section 9 as meaning the veto cannot occur until the full 60-day period has lapsed. Such an interpretation is against the plain and ordinary language of the Act.

The Act specifically states that if a petition is filed *within* 60 days following adjournment, no such district may be created. Once that petition is filed containing the signatures of 51% of the owners and electors, the legislative requirements for defeat have been met. The fact that 60 days are given within which to file the petition in objection does not mean the veto cannot be accomplished until the 60th day. The veto becomes effective on the day a satisfactory petition is filed.

To hold that signatures may be withdrawn until the Village determines the statutory requirements have been met, as defendant would have us do, would defeat the purpose of section 9. That section is designed to give residents and property owners within the special service area the opportunity to overrule the creation of the district. The requirements are straightforward: file a petition containing the signatures of 51% of the owners within the area and 51% of the electors within 60 days of final adjournment, and the special service area is defeated.

■ The section does not require an additional hearing by the Village after the petition has been filed to pass on the sufficiency of the petition, and we will not read such a requirement into the statute. To do so would give the Village the power to undermine the petition and would make the 60-day requirement a nullity. Those in opposition to the district would only have 60 days within which to object, but those in support of the district would be given a chance to defeat the petition up until the time the Village decides to pass on its sufficiency. The Village could do so at any time from the day the petition is filed until well past the 60-day time limit. This clearly defeats the intent of the legislature to provide residents and owners with a veto procedure.

■ Accordingly, we hold final action occurs at the time when the petition containing the sufficient amount of signatures is filed within the 60-day time limit. At that time, the statutory requirements for defeating the district have been met, and no such district may be created. In the instant case, final action took place on Jan-

uary 18, 1989, when the petition was filed and at that time the special service district was defeated.

The judgment of the circuit court is reversed.

Reversed.

REINHARD, P.J., and BOWMAN, J., concur.