PUFFER-HEFTY SCHOOL DISTRICT No. 69 *et al.*, Plaintiffs-Appellants, v. THE DU PAGE REGIONAL BOARD OF SCHOOL TRUSTEES OF DU PAGE COUNTY *et al.*, Defendants-Appellees.

Second District    No. 2—02—0196

Opinion filed April 25, 2003.—Rehearing denied June 3, 2003.

Patrick K. Bond and Mary E. Dickson, both of Bond, Dickson & Associates, P.C., of Wheaton, and Burton S. Odelson and Amy E. Smith, both of Odelson & Sterk, Ltd., of Evergreen Park, for appellants.

Karl R. Ottosen, Maureen Anichini Lemon, and Stephanie A. Benway, all of Ottosen, Trevarthen, Britz, Kelly & Cooper, Ltd., of Wheaton, for appellees Committee of Ten and its members.

Lisa Madigan, Attorney General (Roger P. Flahaven, Assistant Attorney General, and Nancy J. Wolfe, Assistant State's Attorney, of counsel), and Rinda Y. Allison, of Klein, Thorpe & Jenkins, Ltd., both of Chicago, for appellees Du Page Regional Board of School Trustees and its members.

PRESIDING JUSTICE HUTCHINSON delivered the opinion of the court:

Plaintiffs, Puffer-Hefty School District No. 69 (Puffer-Hefty) and Bruce Weeks, appeal from an order of the circuit court of Du Page County on administrative review affirming a decision by defendant Du Page Regional Board of School Trustees (the Board). Pursuant to sections 7—2a(b) and 7—11 of the School Code (105 ILCS 5/7—2a(b), 7—11 (West 1996)), the Board dissolved Puffer-Hefty and annexed its territory to defendant Downers Grove School District No. 58 (Downers Grove). Plaintiffs filed a complaint seeking administrative review of the Board's decision and a judgment declaring section 7—2a(b) of the School Code unconstitutional. The trial court affirmed the Board's decision but declined to rule on the constitutionality of the statute. Plaintiffs timely appeal to this court, challenging the Board's decision and the constitutionality of the statute. For the reasons that follow, we

affirm the Board's decision and uphold the constitutionality of section 7—2a(b) of the School Code.

■ The following facts are taken from the record on appeal, including the Board's factual findings, which are "held to be prima facie true and correct" (735 ILCS 5/3—110 (West 2000)). Puffer-Hefty is situated within Du Page County, and in July 1997 its population numbered less than 5,000 residents. In October 1996, residents of Puffer-Hefty filed a petition pursuant to sections 7—2a(b) and 7—11 of the School Code (105 ILCS 5/7—2a(b), 7—11 (West 1996)), seeking to dissolve the school district and annex its territory to a contiguous school district. In December 1996 the Board dismissed the petition because the petition lacked the proper designation of a "committee of 10" petitioners as required by section 7—6(c) of the School Code (105 ILCS 5/7—6(c) (West 1996)), and the Board, therefore, lacked jurisdiction.

On January 27, 1997, defendant Committee of Ten conducted a public informational meeting to inform residents of Puffer-Hefty of the proposed dissolution and to answer questions regarding the proposed dissolution. Prior to that, the Committee of Ten gave at least 10 days' notice of the meeting by publication in the Chicago Tribune.

On July 25, 1997, the Committee of Ten filed a second petition seeking dissolution of Puffer-Hefty and annexation of its territory pursuant to sections 7—2a(b) and 7—11 of the School Code (105 ILCS 5/7—2a(b), 7—11 (West 1996)). As of July 25, 1997, Puffer-Hefty had 1,947 registered voters. The petition filed on July 25 contained 1,169 signatures. The parties later stipulated that, of those 1,169 signatures, 3 individuals had moved or died before July 25, 1997, thereby invalidating those signatures, and 65 signatures were duplicates and should be counted only once. The parties agreed that, after the subtraction of those 68 signatures, the petition contained 1,101 valid signatures.

On October 6, 1997, the Board dismissed the second petition after it determined that it violated section 7—8 of the School Code (105 ILCS 5/7—8 (West 1996)), which prohibited the filing of a similar petition for dissolution and annexation within two years of the resolution of an earlier petition. On administrative review, the trial court reversed the Board's dismissal of the second petition, and this court affirmed. See *Holbrook v. Regional Board of School Trustees*, 305 Ill. App. 3d 744 (1999).

On remand, the Board resumed hearings and designated December 10, 1999, as the final date by which the parties could submit signature withdrawals, rescission of signature withdrawals, and signature additions to the original petition. The Board reconvened on July 17, 2000,

to rule on the petition. The Board first made decisions regarding the validity of the signatures to be withdrawn from and added to the petition. The Board then voted unanimously that the petition was signed by a majority of the registered voters of Puffer-Hefty and that the petition was properly filed under section 7—2a(b) of the School Code. The Board thereafter recognized the dissolution of Puffer-Hefty and indicated it would conduct further hearings regarding the issue of annexation.

On February 15, 2001, after conducting additional hearings, the Board decided to annex Puffer-Hefty to Downers Grove. See 105 ILCS 5/7—11 (West 1996). The Board's decisions were reflected in its written order dated February 22, 2001. On March 5, 2001, plaintiffs filed a complaint in the trial court seeking administrative review of the Board's decision and seeking a declaratory judgment that section 7—2a(b) of the School Code was unconstitutional. Both sides fully briefed the issues. On January 25, 2002, the trial court affirmed the Board's decisions to dissolve Puffer-Hefty and annex its territory to Downers Grove. Plaintiffs timely appeal following the trial court's denial of their motion to reconsider.

Plaintiffs first contend that the trial court erred when it declined to rule on the constitutionality of section 7—2a(b) of the School Code (105 ILCS 5/7—2a(b) (West 1996)). Plaintiffs argued that section 7—2a(b) violated the equal protection clause (U.S. Const., amend. XIV) and constituted special legislation (Ill. Const. 1970, art. IV, § 13). The trial court determined that, because nonconstitutional grounds existed to deny Puffer-Hefty relief, it was unnecessary to consider the constitutionality of section 7—2a(b).

■ In determining whether the trial court erred when it declined to consider the constitutionality of section 7—2a(b), we are guided by the general principles governing an agency's or a tribunal's authority to decide constitutional issues raised in administrative proceedings. An administrative agency must accept as constitutional the statute over which it has jurisdiction. *Board of Education of Rich Township High School District No. 227 v. Brown*, 311 Ill. App. 3d 478, 490 (1999). An administrative agency lacks the authority to invalidate a statute on constitutional grounds or even to question its validity. *Texaco-Cities Service Pipeline Co. v. McGaw*, 182 Ill. 2d 262, 278 (1998), citing *Moore v. City of East Cleveland*, 431 U.S. 494, 497 n.5, 52 L. Ed. 2d 531, 536 n.5, 97 S. Ct. 1932, 1934 n.5 (1977); *Brown*, 311 Ill. App. 3d at 490. Such matters must be raised before the trial court, which is vested with original jurisdiction over constitutional issues raised in a complaint for administrative review. *Brown*, 311 Ill. App. 3d at 491. A trial court's review of constitutional issues on administrative review is

*de novo. Brown*, 311 Ill. App. 3d at 488, citing *Howard v. Lawton*, 22 Ill. 2d 331 (1961).

■ In the present case, plaintiffs' complaint for administrative review specifically sought a declaration that section 7—2a(b) of the School Code was unconstitutional. Both sides fully briefed the constitutional issue. The trial court was given the opportunity to consider the issue. See, *e.g.*, *Michigan-Chestnut Ltd. Partnership v. Rosewell*, 104 Ill. App. 3d 249, 252 (1982), citing *Steven v. Falese Land Co.*, 50 Ill. App. 3d 231, 246 (1977) (declining to address constitutional questions that the trial court was not given an opportunity to consider). However, it declined to rule on the constitutional issue. This was error.

Remand is unnecessary, though. If the issue is one of law and is fully briefed and argued by the parties, this court may consider the issue for the first time on appeal. See *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 11 (1996), citing *People ex rel. Daley v. Datacom Systems Corp.*, 146 Ill. 2d 1, 27 (1991); see also *Church v. State of Illinois*, 164 Ill. 2d 153, 163 (1995) (wherein the trial court did not consider the constitutionality of a statute but the reviewing courts did). The constitutionality of section 7—2a(b) of the School Code presents a question of law. Whether section 7—2a(b) violates equal protection or constitutes special legislation has been sufficiently briefed and argued by both sides to facilitate our review. Furthermore, the questions are of substantial public importance, and we believe the public interest and judicial economy favor consideration of the merits. See *Committee for Educational Rights*, 174 Ill. 2d at 11. Accordingly, we proceed to the merits of plaintiffs' argument.

■ Section 7—2a(b) of the School Code provides in relevant part:
"Any school district with a population of less than 5,000 residents shall be dissolved and its territory annexed as provided in Section 7—11 by the regional board of school trustees upon the filing with the regional board of school trustees of a petition adopted by resolution of the board of education or a petition signed by a majority of the registered voters of the district seeking such dissolution." 105 ILCS 5/7—2a(b) (West 1996).

Plaintiffs argue that section 7—2a(b) of the School Code violates equal protection (U.S. Const., amend. XIV) and constitutes special legislation (Ill. Const. 1970, art. IV, § 13). Plaintiffs assert that the statute violates equal protection because it treats school districts with populations of less than 5,000 differently from other school districts with populations greater than 5,000. Plaintiffs argue that, in school districts with populations greater than 5,000, the decision to dissolve and annex must be approved by a majority of voters at an election.

See 105 ILCS 5/7—1(a) (West 1996). Plaintiffs urge this court to apply a strict scrutiny analysis because the statute concerns the fundamental right to vote.

The Committee of Ten counters that different classes of people may be treated differently if the classifications created by the statute are reasonably related to the objective of the statute (*In re Petition of the Village of Hanover Park*, 312 Ill. App. 3d 834 (2000)). The Committee of Ten also maintains that the appropriate analysis is rational basis review because everyone in the Puffer-Hefty school district was treated equally with respect to petitioning for dissolution without an election. The Committee of Ten cites *Latham v. Board of Education of the City of Chicago*, 31 Ill. 2d 178 (1964), in support of its position. In *Latham*, our supreme court considered whether article 34 of the School Code (Ill. Rev. Stat. 1963, ch. 122, par. 34—1 *et seq.*) denied equal protection because it deprived residents of Chicago of the right to vote for members of the board of education, a right statutorily enjoyed by residents of smaller districts in Illinois. The *Latham* court adopted the reasoning from *People v. Deatherage*, 401 Ill. 25 (1948), and determined that the legislature possessed the power to legislate in reference to public school matters and that the right to vote was purely a permissive right that the legislature bestowed in furtherance of its policy. *Latham*, 31 Ill. 2d at 186. The *Latham* court concluded that the state's regulatory interests were sufficient to justify the restriction and, therefore, the statute did not deny the residents equal protection. *Latham*, 31 Ill. 2d at 186-87.

■ The primary rule of statutory interpretation is to ascertain and give effect to the intent of the legislature, which should be construed primarily from the language of the statute. *East St. Louis Federation of Teachers, Local 1220 v. East St. Louis School District No. 189*, 178 Ill. 2d 399, 411-12 (1997), citing *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397 (1994). Legislation enjoys a strong presumption of constitutionality. *Bilyk v. Chicago Transit Authority*, 125 Ill. 2d 230, 235 (1988). Parties seeking to challenge the constitutionality of a statute bear the burden of rebutting the presumption and establishing a constitutional violation. *East St. Louis Federation of Teachers*, 178 Ill. 2d at 412, citing *People v. Blackorby*, 146 Ill. 2d 307, 318 (1992). Accordingly, a court will construe a statute as constitutional where it can do so reasonably. *East St. Louis Federation of Teachers*, 178 Ill. 2d at 412, citing *Bonaguro*, 158 Ill. 2d at 397. Our review is *de novo*. *Paris v. Feder*, 179 Ill. 2d 173, 177-78 (1997).

■ In determining the level of scrutiny, we first address whether the statute infringes upon a fundamental right. "Unless legislation operates to the disadvantage of a suspect classification or infringes

upon a fundamental right, the legislation, to be upheld as constitutional, must simply bear a rational relationship to a legitimate governmental interest." *Chicago National League Ball Club, Inc. v. Thompson*, 108 Ill. 2d 357, 367-68 (1985), citing *Illinois Housing Development Authority v. Van Meter*, 82 Ill. 2d 116, 119-20 (1980). Although education is certainly a vitally important governmental function (see *Fumarolo v. Chicago Board of Education*, 142 Ill. 2d 54, 73-74 (1990)), it is not a fundamental individual right for equal protection purposes. *Committee for Educational Rights*, 174 Ill. 2d at 11.

■ ■ The constitutional principle of "one person, one vote" derives from two articles of the Illinois Constitution of 1970. Article I, section 2, provides that "[n]o person shall be *** denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2. Article III, section 3, states that "[a]ll elections shall be free and equal." Ill. Const. 1970, art. III, § 3. The right to vote is a fundamental right. *Tully v. Edgar*, 171 Ill. 2d 297, 306 (1996); *Fumarolo*, 142 Ill. 2d at 74. Therefore, legislation that infringes upon the right to vote is subject to strict scrutiny. *Orr v. Edgar*, 298 Ill. App. 3d 432, 437-38 (1998), citing *Tully*, 171 Ill. 2d at 304; *Fumarolo*, 142 Ill. 2d at 74. However, it is equally well established that the legislature has the right to reasonably regulate the time, place, and manner in which the citizens exercise their right to vote. *Orr*, 298 Ill. App. 3d at 438, citing *McDunn v. Williams*, 156 Ill. 2d 288, 316 (1993); see also *Walgreen Co. v. Illinois Liquor Control Comm'n*, 111 Ill. 2d 120 (1986). Legislation that affects voting in this regard is subject to the rational basis test. *Orr*, 298 Ill. App. 3d at 438, citing *Walgreen*, 111 Ill. 2d at 127.

■ In the present case, we determine that section 7—2a(b) of the School Code does not infringe upon the right to vote. Rather, the statute affects the manner in which the citizens of Puffer-Hefty exercise their right to vote. See *Orr*, 298 Ill. App. 3d at 438. The statute does not prohibit those citizens of Puffer-Hefty from voting to maintain or dissolve their school district. Rather, it provides for a method to bring the voting booth to each of their homes in the form of a petition circulation and signing. Each registered voter received notice by publication of a public informational meeting concerning the dissolution. Each registered voter of Puffer-Hefty still had the right to cast a decision on whether to maintain or dissolve Puffer-Hefty. Section 7—2a(b) dictated only the manner by which the Puffer-Hefty voters exercised their right. Accordingly, section 7—2a(b) is legislation subject to the rational basis test. See *Orr*, 298 Ill. App. 3d at 438, citing *Walgreen*, 111 Ill. 2d at 127.

We also find support for our conclusion in *Spaulding v. Illinois Community College Board*, 64 Ill. 2d 449 (1976). In *Spaulding*, our

supreme court held that there was no constitutional right to a referendum in connection with the formation of a new community college district although the relevant statute provided for a referendum when territory was being annexed to a district. *Spaulding*, 64 Ill. 2d at 456. The *Spaulding* court relied on its earlier decision in *Latham* and stated that the right to vote in a referendum was "purely a permissive one bestowed by the legislature." *Spaulding*, 64 Ill. 2d at 456. It thereafter applied the rational basis test and concluded that no equal protection violation existed. *Spaulding*, 64 Ill. 2d at 456-57.

We find *Spaulding* and the authorities cited by the Committee of Ten persuasive and conclude that section 7—2a(b) of the School Code does not infringe on the fundamental right to vote. Because the School Code is an enactment bestowed upon us by the legislature (*Spaulding*, 64 Ill. 2d at 456) and because neither a fundamental right nor a suspect class is involved, there is no constitutional right to hold an election to dissolve and annex Puffer-Hefty. Therefore, we need only to determine whether the statute bears a rational relationship to the State's ends or promotes the State's interest in this area.

■ Under the rational basis test, judicial review of a legislative classification is limited and generally deferential. *Committee for Educational Rights*, 174 Ill. 2d at 37, citing *Jacobson v. Department of Public Aid*, 171 Ill. 2d 314, 323 (1996). The challenged classification need only be rationally related to a legitimate state goal, and if any set of facts can reasonably be conceived to justify the classification, it must be upheld. *Committee for Educational Rights*, 174 Ill. 2d at 37. Whether a rational basis exists for legislation presents a question of law, which we review *de novo*. *Jacobson*, 171 Ill. 2d at 323.

■ The equal protection question, therefore, is whether a rational basis exists for allowing the dissolution and annexation of a school district based on a majority of voter signatures when the school district's population is less than 5,000 residents. The concept of "local control" in public education connotes not only the opportunity for local participation in decision making but also " 'the freedom to devote more money to the education of one's children.' " *Committee for Educational Rights*, 174 Ill. 2d at 38, quoting *San Antonio Independent School District v. Rodriguez*, 411 U.S. 1, 49-50, 36 L. Ed. 2d 16, 52, 93 S. Ct. 1278, 1304-05 (1973). Under prior decisions of our supreme court, the state's interest in education is so pervasive that it may constitutionally establish or alter school districts without a local referendum or a subsequent election. See *Spaulding*, 64 Ill. 2d at 456, citing *People v. Francis*, 40 Ill. 2d 204, 212 (1968); see also *People ex rel. McLain v. Gardner*, 408 Ill. 228 (1951); *People v. Deatherage*, 401 Ill. 25 (1948). We believe that a system to dissolve and annex based on

a majority of voter signatures when a school district's population is less than 5,000 residents is rationally related to the legitimate state goal of promoting local control of education economically and efficiently. See *Committee for Educational Rights*, 174 Ill. 2d 1. It was the Puffer-Hefty residents themselves asserting their local control that decided the fate of their school system.

Plaintiffs argue, though, that the population-based distinction created by section 7—2a(b) of the School Code is an arbitrary classification and, therefore, cannot be rationally related to a legitimate government interest. We disagree. Illinois courts have consistently upheld the constitutionality of legislative classifications based upon population. *Gorgees v. Daley*, 256 Ill. App. 3d 143, 148 (1993), citing *Chicago National League Ball Club*, 108 Ill. 2d 357; *People v. Palkes*, 52 Ill. 2d 472 (1972); *Du Bois v. Gibbons*, 2 Ill. 2d 392 (1954); *Starnawski v. License Appeal Comm'n*, 101 Ill. App. 3d 1050 (1981); *Lee v. Retirement Board of the Policeman's Annuity & Benefit Fund*, 22 Ill. App. 3d 600 (1974). Accordingly, plaintiffs' claim fails.

Plaintiffs' second argument regarding the constitutionality of section 7—2a(b) of the School Code is that the statute is special legislation because it affects only those school districts with populations of less than 5,000. Article IV, section 13, of the Illinois Constitution states:

"The General Assembly shall pass no special or local law when a general law is or can be made applicable. Whether a general law is or can be made applicable shall be a matter for judicial determination." Ill. Const. 1970, art. IV, § 13.

Special legislation confers a special benefit or privilege on a person or group of persons to the exclusion of others similarly situated. *Chicago National League Ball Club*, 108 Ill. 2d at 367. It discriminates in favor of a select group without a sound, reasonable basis. *Chicago National League Ball Club*, 108 Ill. 2d at 367, citing *Fireside Chrysler-Plymouth, Mazda, Inc. v. Edgar*, 102 Ill. 2d 1, 4 (1984). Though the constitutional protections involved are not identical, a claim that the special-legislation provision has been violated is generally judged by the same standard that is used in considering a claim that equal protection has been denied. *Chicago National League Ball Club*, 108 Ill. 2d at 368, citing *Van Meter*, 82 Ill. 2d at 123. Accordingly, we reject plaintiffs' claim of unconstitutional special legislation based on a population classification for the same reasons that we rejected their equal protection claim.

Plaintiffs' reliance on *In re Belmont Fire Protection District*, 111 Ill. 2d 373 (1986), and *In re Petition of the Village of Vernon Hills*, 168 Ill. 2d 117 (1995), is misplaced. In *Belmont*, the supreme court

considered an enactment that, as amended, provided for the disconnection and transfer of a fire protection district in any county with a population of more than 600,000 but less than 1 million residents. The House debates indicated that the purpose of the amendment relating to population was to limit the bill's application to Du Page County. The supreme court found that the enactment denied all other counties the privilege of consolidating fire protection services into a single fire protection district and held that the population classification was an arbitrary distinction constituting special legislation. *Belmont*, 111 Ill. 2d at 382. In *Vernon Hills*, our supreme court declared legislation involving the transfer and annexation of non-home-rule municipal fire protection districts with populations between 500,000 and 750,000 unconstitutional because it applied only to Lake County. *Vernon Hills*, 168 Ill. 2d at 126-27.

■ Here, however, section 7—2a(b) of the School Code applies to all Illinois school districts with fewer than 5,000 residents. Plaintiffs have presented no evidence to establish that Puffer-Hefty is the only school district in Illinois with fewer than 5,000 residents. Accordingly, *Belmont* and *Vernon* do not apply here. We also note that, in any given time period and depending on the increase or decrease of an area's population, an Illinois school district may or may not be subject to the dissolution and annexation provisions of section 7—2a(b). Therefore, because the statute applies to all Illinois school districts with fewer than 5,000 residents and is uniform in its application, it does not constitute special legislation. See also *People ex rel. Stamos v. Public Building Comm'n*, 40 Ill. 2d 164 (1968) (holding valid an act that extended the authority to create a public building commission to municipalities having populations of 3,000 or more).

Inasmuch as it was plaintiffs' burden to rebut the presumption of constitutionality of section 7—2a(b) of the School Code and establish a constitutional violation (*East St. Louis Federation of Teachers*, 178 Ill. 2d at 412), they have failed to satisfy their burden.

■ Plaintiffs next take issue with the sufficiency of the July 25, 1997, petition and the Board's decision to grant the petition dissolving Puffer-Hefty and the Board's later decision to annex the territory into Downers Grove. Our standard of review for a final administrative decision is governed by the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 2000)). Under the Administrative Review Law, our review encompasses all questions of law and fact presented by the entire record. 735 ILCS 5/3—110 (West 2000); *Bridgestone/Firestone, Inc. v. Aldridge*, 179 Ill. 2d 141, 148 (1997). Our role is to review the administrative decision, not the trial court's determination. *Thigpen v. Retirement Board of Firemen's Annuity & Benefit Fund*, 317 Ill. App. 3d 1010, 1017 (2000).

In examining an administrative agency's factual findings, we are limited to ascertaining whether such findings of fact are against the manifest weight of the evidence. *City of Belvidere v. Illinois State Labor Relations Board*, 181 Ill. 2d 191, 204 (1998), citing *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). An agency's findings on a question of law are reviewed *de novo*. *City of Belvidere*, 181 Ill. 2d at 205; *White v. City of Aurora*, 323 Ill. App. 3d 733, 735 (2001). A decision involving a mixed question of fact and law, however, is reviewed using a "clearly erroneous" standard. *City of Belvidere*, 181 Ill. 2d at 205; *Virden v. Board of Trustees of the Firefighters Pension Fund*, 304 Ill. App. 3d 330, 335 (1999).

In the present case, plaintiffs state that the only dispute concerns the interpretation of section 7—2a(b) of the School Code and other related provisions. Therefore, our review is *de novo*. See *City of Belvidere*, 181 Ill. 2d at 205; *White*, 323 Ill. App. 3d at 735. Finally, if the record contains competent evidence supporting the administrative body's decision, it must be affirmed on review. *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App. 3d 520, 528 (1997).

Plaintiffs present various arguments in support of their contention that the Board erred when it granted the July 25, 1997, petition to dissolve Puffer-Hefty. Most of their arguments focus on the Board's interpretation of section 7—2a(b) of the School Code. Our interpretation of the statute at issue will effectively resolve those arguments. Section 7—2a(b) provides in relevant part:

> "Any school district with a population of less than 5,000 residents shall be dissolved and its territory annexed as provided in Section 7—11 by the regional board of school trustees upon the filing with the regional board of school trustees of a petition adopted by resolution of the board of education or a petition signed by a majority of the registered voters of the district seeking such dissolution. No petition shall be adopted or signed under this subsection until the board of education or the petitioners, as the case may be, shall have given at least 10 days' notice to be published once in a newspaper having general circulation in the district and shall have conducted a public informational meeting to inform the residents of the district of the proposed dissolution and to answer questions concerning the proposed dissolution. The petition shall be filed with and decided solely by the regional board of school trustees of the region in which the regional superintendent of schools has supervision of the school district being dissolved. The regional board of school trustees shall not act on a petition filed by a board of education if within 45 days after giving notice of the hearing required under Section 7—11 a petition in opposition to the peti-

tion of the board to dissolve, signed by a majority of the registered voters of the district, is filed with the regional board of school trustees. The regional board of school trustees shall have no authority to deny dissolution requested in a proper petition for dissolution filed under this subsection (b), but shall exercise its discretion in accordance with Section 7—11 on the issue of annexing the territory of a district being dissolved, giving consideration to but not being bound by the wishes expressed by the residents of the various school districts that may be affected by such annexation." 105 ILCS 5/7—2a(b) (West 1996).

■ We are guided by the following principles concerning our interpretation of section 7—2a(b) of the School Code. Where a legal question is involved, such as the proper interpretation of a statute, the agency's finding is not binding on the reviewing court. *Moller v. Civil Service Comm'n*, 326 Ill. App. 3d 660, 664 (2001), citing *City of Freeport v. Illinois State Labor Relations Board*, 135 Ill. 2d 499, 507 (1990). Generally, courts will accord deference to an agency's statutory interpretation; however, the interpretation will be rejected when erroneous. *Moller*, 326 Ill. App. 3d at 664, citing *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361 (1988).

■ In regard to interpreting a statute, our supreme court has stated:

"The primary rule of statutory construction is to give effect to legislative intent by first looking at the plain meaning of the language. 'Where the language of a statute is clear and unambiguous, a court must give it effect as written, without "reading into it exceptions, limitations or conditions that the legislature did not express." ' [Citation.] Courts will first look to the words of the statute, for the language used by the legislature is the best indication of legislative intent. [Citation.] When the language of a statute is clear, no resort is necessary to other tools of interpretation. [Citation.]" *Davis v. Toshiba Machine Co., America*, 186 Ill. 2d 181, 184-85 (1999).

Here, the first precondition for the Committee of Ten to dissolve Puffer-Hefty was to give at least 10 days' notice of an informational meeting "in a newspaper having general circulation in the district." 105 ILCS 5/7—2a(b) (West 1996). The Board found that the Committee of Ten satisfied this first precondition by publishing the notice in the Chicago Tribune. Although plaintiffs complain that the notice was "buried" and "effectively meaningless," it is not an issue here. See *Second Federal Savings & Loan Ass'n of Chicago v. Home Savings & Loan Ass'n*, 60 Ill. App. 3d 248, 254 (1978) (noting that Chicago daily papers are circulated throughout the state). Plaintiffs present no chal-

lenge to this finding of the Board, which therefore must "be held to be prima facie true and correct." 735 ILCS 5/3—110 (West 2000).

The second precondition for the Committee of Ten to dissolve Puffer-Hefty was to conduct an informational meeting to inform the residents of Puffer-Hefty of the proposed dissolution and to answer questions about it. Here again, plaintiffs complain that only 35 people attended the meeting and that the essential questions went unanswered. However, plaintiffs present no challenge to this finding of the Board, and, therefore, the finding is "held to be prima facie true and correct." 735 ILCS 5/3—110 (West 2000).

Thereafter, the Committee of Ten faced the task of circulating petitions to collect signatures of registered voters who supported the dissolution of Puffer-Hefty. Section 7—2a(b) of the School Code required the petition to be signed by a "majority of the registered voters of the district." 105 ILCS 5/7—2a(b) (West 1996). The parties stipulated that on July 25, 1997, there were 1,947 registered voters in Puffer-Hefty. Therefore, a majority consisted of 974 registered voters. The Committee of Ten collected 1,169 signatures and filed the petition on July 25, 1997. The parties further agreed that, of those 1,169 signatures, 3 signatures were invalid, and 65 signatures were duplicates. The parties agreed that subtracting those 68 signatures resulted in 1,101 valid signatures on the July 25, 1997, petition.

The heart of this appeal is premised on the events transpiring after July 25, 1997. Again, to summarize: on October 6, 1997, the Board dismissed the July 25, 1997, petition. On administrative review, the trial court reversed the Board's dismissal, and this court affirmed. See *Holbrook*, 305 Ill. App. 3d 744. On remand, the Board resumed hearings and designated December 10, 1999, as the final date by which the parties could submit signature withdrawals, rescission of signature withdrawals, and signature additions to the original petition. The Board reconvened on July 17, 2000, and made decisions regarding the validity of signatures to be withdrawn from and added to the petition. After deciding the validity of the signatures, the Board voted unanimously that the petition was signed by a majority of the registered voters of Puffer-Hefty and that the petition was properly filed under section 7—2a(b) of the School Code. The Board thereafter recognized the dissolution of Puffer-Hefty and indicated it would exercise its discretion regarding the issue of annexation.

The question appears to be at what point should the Board cease to allow the addition of signatures, the withdrawal of signatures, and the rescission of the withdrawn signatures. Plaintiffs argue that the Board should not allow any additional signatures or rescission of withdrawn signatures after the July 25, 1997, filing date but should

allow the withdrawal of signatures at any time and "until a decision on the merits is made." The Committee of Ten counters that section 7—2a(b) petitions are presumptively valid upon the date of filing, and that presumption negates the opportunity for individuals to withdraw or add their signatures after the date the petition has been filed. Plaintiffs state that the resolution of this question is dispositive of the entire case because it involves the sufficiency of the July 25, 1997, petition. We agree.

Section 7—2a(b) states that "[a]ny school district with a population of less than 5,000 residents shall be dissolved *** upon the filing with the regional board of school trustees of *** a petition signed by a majority of the registered voters of the district seeking such dissolution." 105 ILCS 5/7—2a(b) (West 1996). We note that the statute requires no postfiling hearing on the matter to effectuate the dissolution.

Plaintiffs make various arguments in support of accepting withdrawals of signatures at any time and against allowing any additional signatures or rescissions of withdrawn signatures after July 25, 1997. Plaintiffs rely on *Littell v. Board of Supervisors*, 198 Ill. 205 (1902), for the proposition that signatures may be withdrawn at any time before a board takes final action and *Augustine v. Regional Board of School Trustees*, 253 Ill. App. 3d 827 (1993), for the proposition that "additions after the date of filing are clearly prohibited by section 7—1 of the [School] Code." *Augustine*, 253 Ill. App. 3d at 836.

In *Littell*, a statute required the county board to create a new township if three-fourths of the registered voters in its territory so petitioned. A petition to create a new township, signed by 227 legal voters, was filed in March 1901 with the county board of Vermilion County. At its March 1901 meeting, the county board ordered the notices to be posted and published as required by the statute, and fixed the June session as the time for final hearing. On June 10, 1901, 77 of the voters who had signed the original petition asked to withdraw their signatures. On June 12, 1901, 50 of those 77 voters repudiated their action and asked that their signatures remain on the original petition. At the September session, the county board denied the petition. A writ of *mandamus* was sought, and our supreme court considered the right of the petitioners to withdraw their names and affirmed the decision of the county board. *Littell*, 198 Ill. at 206-07.

The *Littell* court noted that, under the relevant statute, after the petition was filed, the county board was required to give notice before it could take any final action to allow interested parties to appear at the final hearing. *Littell*, 198 Ill. at 208. The *Littell* court reasoned that "[e]ach petitioner acts on his individual responsibility, and if he

should change his mind on the question whether a new township would better serve the convenience of the inhabitants residing therein, or if he should be induced to sign it under a misapprehension or through undue influence, he ought to have the right to correct his mistake, if he does so before the rights of others have attached by the final action on the part of the board." *Littell*, 198 Ill. at 210. The *Littell* court concluded "that the act of signing such petitions is not an irrevocable act, and that it may be revoked at any time before the jurisdiction of the body authorized to act has been determined by it." *Littell*, 198 Ill. at 208.

In *Augustine*, the Fifth District adopted the general rule of *Littell* and also relied on *Konald v. Board of Education of Community Unit School District 220*, 114 Ill. App. 3d 512 (1983), when it interpreted section 7—2a(b) of the School Code to allow the withdrawal of signatures to a petition to dissolve at any time before the regional board conducts a hearing to determine the validity of the signatures. *Augustine*, 253 Ill. App. 3d at 833.

The Committee of Ten, however, asserts that we should follow the rationale of *Board of Education of Wapella Community Unit School District No. 5, De Witt County v. Regional Board of School Trustees of McLean-De Witt Counties*, 245 Ill. App. 3d 776 (1993), in support of its proposition that no signatures or signature withdrawals should be allowed after the date the petition is filed. *Wapella*, 245 Ill. App. 3d at 782. In *Wapella*, the Fourth District considered a challenge to section 7—2a(b) of the School Code similar to that presented here. On September 1, 1992, a group of petitioners filed a petition with their regional board seeking to dissolve their school district and annex its territory pursuant to section 7—2a(b). On September 9, 1992, another group (the objectors) filed an objection to the petition challenging the validity of a number of signatures, which, if they were found to be invalid, would have invalidated the entire petition. On November 13, 1992, the regional board found that the petition for dissolution was legally sufficient, but it made no ruling regarding the request to withdraw names. *Wapella*, 245 Ill. App. 3d at 778-79.

On administrative review, the Fourth District concluded that the request to withdraw signatures was ineffective and the regional board's decision to annex the Wapella territory was not contrary to the manifest weight of the evidence. *Wapella*, 245 Ill. App. 3d at 779. Addressing the objectors' request to withdraw signatures, the *Wapella* court discussed the *Littell* and *Konald* decisions and reviewed the framework of the statutes at issue. It noted that the statutes in *Littell* and *Konald* provided for a hearing to take place on the sufficiency of the petition before the requested change would take effect. *Wapella*,

245 Ill. App. 3d at 781. In section 7—2a(b) of the School Code, however, the legislature provided that, *before* a petition is filed or even circulated, at least 10 days' notice by publication must be given and a public informational meeting must have been conducted. *Wapella*, 245 Ill. App. 3d at 783, citing 105 ILCS 5/7—2a(b) (West 1992). The *Wapella* court determined that, when the legislature provided that dissolution occurred upon the filing of a petition, a presumption of validity was created, which attached immediately upon the filing of the petition without the further necessity of the regional board taking "final action," within the meaning of *Littell*, to determine the petition's validity. *Wapella*, 245 Ill. App. 3d at 782.

■ We believe that *Wapella* is the more reasoned approach and adopt it here. The registered voters of Puffer-Hefty were given at least 10 days' notice by publication in the Chicago Tribune regarding the public informational meeting. The registered voters of Puffer-Hefty were given the opportunity to attend a public informational meeting on January 27, 1997. The registered voters had an opportunity to ask questions at the time the petition was presented to them to sign. Further, and consistent with the rationale of *Littell*, the signers of the petition had every opportunity to withdraw their names from the petition for any reason before it was filed, which in this case was some six months later. Therefore, we believe that a presumption exists that the registered voters of Puffer-Hefty were informed about the contents of the petition before they signed it.

Based on the language of the statute, we agree with the Committee of Ten that a legislative presumption of validity attached to the section 7—2a(b) petition immediately upon its filing. See *Holbrook*, 305 Ill. App. 3d at 748, citing *Wapella*, 245 Ill. App. 3d at 782. In the present case, the Committee of Ten filed its petition on July 25, 1997. Despite the first appeal and the Board's actions following remand, the filing date of July 25, 1997, is the controlling date by which we view the sufficiency of the petition.

Accordingly, once the petition was filed on July 25, 1997, "final action" had occurred, and no party should have been allowed to add her or his signature, withdraw her or his signature, or rescind her or his withdrawn signature. See *Wapella*, 245 Ill. App. 3d at 782-83; accord *Beghr Willowbrook Venture v. Village of Willowbrook*, 217 Ill. App. 3d 614, 618 (1991). Additionally, as the *Wapella* court noted, the statute provides for the withdrawal of signatures when a counterpetition is filed in opposition to dissolution within 45 days after the filing of the petition to dissolve by a majority of registered voters. *Wapella*, 245 Ill. App. 3d at 782; see also 105 ILCS 5/7—2a(b) (West 1996). On the basis of our ruling, therefore, whatever steps the Board took when it

reopened the signature and withdrawal-of-signature process were in error. However, because the record contains competent evidence supporting the Board's decision, we affirm. See *Merrifield*, 294 Ill. App. 3d at 528.

Our interpretation of the legislation involved here is consistent with our ruling in *Beghr*, 217 Ill. App. 3d 614, a case involving a different statute but warranting a brief discussion of its rationale. In *Beghr*, this court interpreted a statute that provided a method by which voters in a municipality could defeat the municipality's creation of a special service area. The statute at issue provided that the voters in the area could defeat the proposed special service area by filing, within 60 days thereof, a petition to object signed by 51% of the voters in the area (Ill. Rev. Stat. 1989, ch. 120, par. 1309). On the fifty-eighth day, the voters filed such a petition that met the requirements of the statute. Two days later, 10 of the signatories petitioned to withdraw their signatures from the objectors' petition, the allowance of which would have invalidated the objectors' petition. The trial court allowed the signatories to withdraw their signatures, and this court reversed. *Beghr*, 217 Ill. App. 3d at 616.

This court reviewed the *Littell* line of cases and held that, under the plain and ordinary meaning of the statute, once an objectors' petition was timely filed, no signer was permitted to withdraw. *Beghr*, 217 Ill. App. 3d at 618. We noted that the statute at issue contained no hearing requirement after the filing of the petition and that, once the legislative requirements of the statute were met, "final action" took place when the petition was filed. *Beghr*, 217 Ill. App. 3d at 618-19. Just as in *Beghr*, when the Committee of Ten in the present case filed its petition to dissolve pursuant to section 7—2a(b) of the School Code, "final action" occurred and the signatures became fixed.

Therefore, using the filing date of July 25, 1997, as the controlling date, the record reflects that there were 1,947 registered voters in Puffer-Hefty. A majority consisted of 974 registered voters. The petition contained 1,101 valid signatures. The statute further reads, "[t]he regional board of school trustees shall have no authority to deny dissolution requested in a proper petition for dissolution filed under this subsection (b)." 105 ILCS 5/7—2a(b) (West 1996). Because the Committee of Ten complied with the notice and meeting provisions of section 7—2a(b) and because the Committee of Ten procured the signatures of a majority of the registered voters, the Board was statutorily required to grant the petition. See also *Holbrook*, 305 Ill. App. 3d at 746 (stating that on July 25, 1997, Puffer-Hefty filed a second petition, "which contained a properly designated committee of 10 and otherwise conformed to sections 7—2a(b) and 7—6(c) of the Code").

We believe that, to accomplish anything, the proponents of a petition must be able to rely upon the signatures obtained at the time of filing. If the proponents are continually forced to seek new signatures to take the place of withdrawals, they may never be able to prepare a proper petition. To permit withdrawals after the petition is completed and filed and the pursuit of securing signatures is abandoned would seem to make the system altogether unworkable. We do not believe that this implied "power" of the signer should be used to jeopardize the exercise of the proponents' statutory right.

■ Section 7—2a(b) of the School Code next provides that the Board "shall exercise its discretion in accordance with Section 7—11 on the issue of annexing the territory of a district being dissolved, giving consideration to but not being bound by the wishes expressed by the residents of the various school districts that may be affected by such annexation." 105 ILCS 5/7—2a(b) (West 1996). Section 7—11 of the School Code states:

> "In the case of an elementary school district if all the eighth grade graduates of such district customarily attend high school in the same high school district, the regional board of school trustees shall *** annex the territory of the district to a contiguous elementary school district whose eighth grade graduates customarily attend that high school, and that has an elementary school building nearest to the center of the territory to be annexed ***." 105 ILCS 5/7—11 (West 1996).

In the present case, the Board found that the eighth-grade graduates of Puffer-Hefty customarily attend high school in Downers Grove. Under section 7—11 of the School Code, the Board was mandated to annex Puffer-Hefty to a contiguous elementary school district whose eighth-grade graduates customarily attend Downers Grove. The Board found that Downers Grove had an elementary school building nearest to the center of Puffer-Hefty. The Board decided that Downers Grove met the section 7—11 criteria for annexation more closely than any other elementary school district in the area. We find no error in the Board's determination. Therefore, the Board properly exercised its discretion pursuant to section 7—11 when it concluded that Downers Grove was the appropriate school district to which the territory of the dissolved Puffer-Hefty should be annexed. The Board's decision was not against the manifest weight of the evidence.

As our resolution of this issue is dispositive, we need not address Puffer-Hefty's remaining arguments on appeal.

214

For the foregoing reasons, we affirm the order of the circuit court of Du Page County.

Affirmed.

McLAREN and O'MALLEY, JJ., concur.